# OCTOBER TERM, 1876.

## (CONTINUED FROM VOL. XXXIV.)

---

### John McDonough v. Benjamin F. Sutton and another.

*Rulings that do not prejudice: Evidence: No tendency to make out a case.* Erroneous rulings in giving or refusing instructions to the jury, which do not work any prejudice to the legal rights of the party complaining of them, are immaterial; and if upon the whole case it is plain the evidence had no tendency to make out a cause of action, the judgment against the plaintiff will not be disturbed for any errors in the charge to the jury.[1]

*Trover: Title: Agreement to sell: Delivery.* A number of farmers having bargained their respective lots of hogs to S at an agreed price, of which a small part was paid down and the balance to be paid on delivery, the farmers to drive the hogs to the shipping place, where they were to be weighed, paid for, delivered, and the title to pass to S, and S having contracted to sell to M the whole quantity at a specified price per pound, receiving part payment down and the balance to be payable when the weight should be ascertained and delivery made by the farmers, or in default the payment down to be forfeited, and upon the day fixed for delivery, M being unprepared to make payment, and the hogs being ready for delivery, S sold the hogs the next day to B, who paid for them and drove them away:—

*Held,* That M could not, upon tender of payment, maintain trover against S and B, nor any other action based on his ownership of the hogs, for the transaction never vested the title in him.[2]

*Submitted on briefs June 21. Decided October 13.*

---

[1] A judgment will not be reversed for error which cannot have prejudiced the party alleging it: *Clark v. Moore,* 3 Mich., 55; *Cummings v. Stone,* 13 Mich., 70; *Sinclair v. Murphy,* 14 Mich., 392 · *Sheehan v. Dalrymple,* 19 Mich., 239; *Slocomb v. Thatcher,* 20 Mich., 52; *Eberstein v. Camp,* 37 Mich., 176; *Louden v. East Saginaw,* 41 Mich., 18; *Bewick v. Fletcher* id. 625; *Castner v. Farmers' &c. Ins. Co.,* 50 Mich., 273; *Olmstead v. Ins. Co.,* id. 200.

[2] The question whether a sale is completed, or only executory, must usually be determined by the intent of the parties to be ascertained from their contract, the situation of the thing sold, and the circumstances surrounding the sale. If something remains to be done to identify the property, or to put it in condition for delivery, or to determine the sum that shall be paid for it, the presumption is always very strong, though it is not conclusive, that by the understanding of the parties the title was not to pass until such act had been fully done. Delivery is the most important fact in showing the intent, but it alone is not conclusive; the title may pass without delivery, and though something remains to be done to fix the price: *Lingham v. Eggleston,* 27 Mich., 324; *Wilkinson v. Holiday,* 33 Mich., 386; *Scotten v. Soutter,* 37 Mich., 526; *Brewer v. Mich. Salt Assoc'n,* 47 Mich., 526; *Hatch v. Fowler,* 28 Mich., 205; *Iron Cliffs Co. v. Buhl,* 42 Mich., 86; *Byles v. Colier,* 53 Mich., June term, 1884; *Crapo v. Seybold, infra* 169; *Grant v. Merch. &c. Bank, infra* 515; *Sandler v. Bresnaham,* 52 Mich.

Upon failure of payment after delivery, if the transaction is for cash, the vendor may reclaim the goods: *Lentz v. F. & P. M. R'y Co.,* 52 Mich.

As to what is a sufficient identification to pass title, see further, *Whitcomb v. Whitney,* 24 Mich., 486; *Adams Mining Co. v. Senter,* 26 Mich., 73; *Colwell v. Keystone, &c. Co.,* 36 Mich., 51; *Carpenter v. Graham,* 42 Mich., 191; *Haskell v. Ayres, infra* 87. As to what is not, see *1st Nat. Bank, &c. v. Crowley,* 24 Mich., 492; *Ortman v. Green,* 26 Mich., 209; *Hahn v. Fredericks,* 30 Mich., 223. See further, authorities in note to *Whitcomb v. Whitney,* 24 Mich., 486.

1

Error to Hillsdale Circuit.

*Pratt & Dickerman* and *C. A. Stacy*, for plaintiff in error.

*E. L. & M. B. Koon*, for defendants in error.

Graves, J.:

  McDonough sued Sutton and Boyle in trover for the [*2] *alleged conversion of one hundred and twenty-five hogs, and the jury finding against him, he brought error.

His objections relate to instructions given and refused. True, some others are stated in the record, but they are not insisted on and will not be noticed.

Whether or not the court erred in giving or refusing instructions, is not important unless the error may have worked prejudice to McDonough's legal rights, and if upon the case as disclosed it not only appears that the evidence had no tendency to make out his cause of action, but, on the contrary, showed that the basis of his claim was such that any charge permitting him to recover would have been improper, it follows he could not have been prejudiced by the ruling, however incorrect, and cannot complain of the finding. As the case must turn upon this view of it, we shall not consider whether the court was right or wrong in the charges given or in the refusals. The vital question at the trial was, whether McDonough was owner of the hogs at the time of the alleged conversion, and indeed whether he became owner at any time. His right rested upon the fact of ownership, and not upon a possessory claim growing out of some other relation to the property. If he was not owner, his action of trover was not maintainable.

He claimed in substance that Sutton, dealing with him through his father, Michael McDonough, sold and conveyed the hogs to him about September 3, 1868, and then turned round and sold and delivered them to the defendant Boyle, and that thereupon Sutton and Boyle denied his right, and disposed of the hogs according to their own pleasure.

The ground taken by defendants was in substance mainly

that the transaction between Sutton and plaintiff fell through by McDonough's default, and never eventuated in any transfer of the property in the hogs. The details on either side do not require statement. Neither is it needful to refer to the evidence adduced by defendants, any further than to say, that it bore against the plaintiff's position, and in no part had any tendency to aid it.

*The clear import of the plaintiff's evidence was, that [*3] a number of farmers had bargained their respective lots of hogs to Sutton at an agreed price, to be paid on delivery, after allowing small payments made at the time of bargaining; that they were to drive the hogs in to Allen, a railroad shipping point in Hillsdale county, on the 11th of September, 1868, when the hogs were to be weighed, and paid for and delivered, and the property in them to vest in Sutton; that in this state of things, and on the 3d of September, 1868, Sutton contracted to sell the whole quantity to the plaintiff at seven and a half cents per pound, and one hundred and fifty dollars were paid upon the contract, and the balance was to be paid on the 11th, when the weight was to be ascertained and delivery made; that the farmers drove in their hogs on the 11th, had them weighed and placed in Winchester's yard, and stood ready to receive their pay and pass the property; that plaintiff's money, which was expected to arrive by express, not coming, he failed to pay Sutton, and the latter on that account could not pay the farmers; that it was then arranged between plaintiff and Sutton and the farmers that matters might stand over till next day to afford plaintiff a chance to get his money and perform, he paying Winchester ninety dollars for feeding and taking care of the hogs meanwhile; and further, that in case plaintiff should receive the money he should pay the whole balance to Winchester, who, it was understood, would pay therefrom to each farmer the amount going to him, and the balance to Sutton; and on the other hand, in case the plaintiff should fail in paying in the balance, that then he should forfeit the one hundred and fifty dollars previously paid to Sutton, and the ninety dollars paid to Winchester; that it was understood the farmers retained their property in the

hogs; that early in the morning of the 11th, and before payment by plaintiff, Sutton sold to Boyle, who paid in full, and these parties drove off the hogs; but whilst doing this, the plaintiff's agent overtook them and tendered the bal- [*4] ance of his contract price and demanded *the hogs, and defendants refused; that subsequently Winchester restored the ninety dollars which had been paid to him.

This explanation is sufficient, without noticing other particulars. They would weigh only against the plaintiff. As it is, it seems to the court clear that, on his own showing, he never acquired the property in the hogs. There was an agreement to buy and sell, but the agreement embodied no conveyance. It was understood on all sides that Sutton was not owner and could not pass title, but was merely an executory buyer of the farmers, who retained ownership to await payment, and who intended to keep it until they should be paid for it by somebody. The whole transaction had reference to this position of the farmers, and did not contemplate that Sutton had acquired title from the farmers and had transferred it to plaintiff. The fact that what had been paid by plaintiff was to be forfeited in case of his failure to pay the balance, is very significant. If he was in a situation to escape taking the property by forfeiting what he had paid, it is not credible that the property was already his. Taking all the circumstances, there seems to be no room for any explanation consistent with the idea that plaintiff became owner of the hogs.

Hence there was no basis for any charge giving ground for a recovery. Whatever were the plaintiff's rights, they would seem, according to this record, not enforcible by any remedy based on his ownership of the hogs.

The judgment must be affirmed, with costs.

The other justices concurred.