THE PEOPLE v. WILLIAM MURRAY.

*Criminal law—Stipulations—Admission of depositions—Assigned counsel—Special findings—Evidence.*

1. A conviction cannot be set aside for the admission of a deposition in pursuance of a voluntary stipulation by the parties or their counsel, even if the respondent is represented only by counsel assigned to

him ; in making such a stipulation the respondent waives his constitutional right to be confronted by the witness.

2. An appellate court has nothing to review in a case at law if the trial court has made no ruling.

3. Where counsel has been assigned to a person on trial and has acted without objection from his client, the latter's conviction cannot be set aside on the ground that counsel was not of respondent's choice.

4. A trial court cannot interfere with a lawful stipulation which the parties enter into, presumably for their own advantage.

5. An instruction to a jury to answer the special questions put to them, keeping in mind that the answers should be consistent with their general verdict, though carelessly expressed is not necessarily open to the criticism that it requires the jury to conform the findings to the verdict ; it may simply mean that the verdict should be in accord with the facts as found.

6. A circus performer went to a dance and was pitched upon by some of the participating citizens. He shrieked "Hey, Rube!" and at this signal a lot of other circus men rushed in and a fight followed in which the town marshal was killed by one of the circus men, as was supposed. *Held*, that on the latter's trial it was proper to exclude as hearsay and immaterial what one of the witnesses had heard of the citizens being drunk and of their having trouble with the marshal.

7. In a trial for murder by assault, the admission of the question "You pride yourself on your muscle, don't you?" could not be prejudicial error if the answer was No.

8. A circus man on trial for a murder committed in a fight, had introduced evidence tending to show that his character and that of his fellows was peaceable. *Held*, that on cross-examination the question "As a member of this circus, how many different fights with outsiders have you been engaged in?" was proper in rebuttal.

Error to Saginaw. (Gage, J.)  Oct. 19.—Dec. 21.

MURDER. Respondent brings error. Conviction affirmed.

*Trask, Grout & Smith* for appellant.

Attorney General *Jacob J. Van Riper* for the People. It is discretionary to permit the questions to be asked that tend to inform the judgments of the triers as to defendant's former life, character and behavior: *People v. Cummins* 47 Mich. 336; *Wilbur v. Flood* 16 Mich. 40; *Clemens v.*

*Conrad* 19 Mich. 170; *Saunders v. People* 38 Mich. 218; *Arnold v. Nye* 23 Mich. 286; *Hamilton v. People* 29 Mich. 173; *Driscoll v. People* 47 Mich. 417.

COOLEY, J.    The respondent stands convicted of the murder of one Emery at Chesaning.    The homicide took place while a circus was on exhibition at that place.    I shall notice in this case only such errors assigned as, after the full presentation of the facts by Mr. Justice Sherwood, seem essential.

A chief ground of error relied upon is that the prosecution was allowed to put in evidence certain depositions taken out of court of witnesses not present at the trial. The facts seem to be that the attorneys for the respective parties stipulated to put in certain depositions on both sides, and they were put in accordingly.    This, it is said, was in violation of the respondent's constitutional right to be confronted with his witnesses.    But the court made no ruling in the matter; what was done was voluntarily done by the parties; the defendant had the benefit of the stipulation, and, for aught we can know, it may have been made chiefly in his interest.    But however that may be, when the court has made no ruling we can have nothing to review.    This Court cannot relieve a party from a criminal conviction because of his own voluntary action on the trial.

It is said the counsel for respondent was counsel assigned to him by the court and may not have been counsel of his choice.    We do not know how the fact was, but we know it is customary to allow the respondent to choose for himself.    But however that may be, the counsel acted for the respondent without objection, and without complaint that he did not do the best he could for him.

The defendant undoubtedly had a constitutional right to be confronted with his witnesses.    He waived that right in this case, apparently for his own supposed advantage and to obtain evidence on his own behalf.    It would have been a mere impertinence for the court to have interfered and precluded this stipulation being acted upon.    But it would

have been more than an impertinence; it would have been gross error. And it would be palpable usurpation of power for us now to set aside a judgment for a neglect of the court not at the time complained of, but in respect to something where any other course would have been plain error.

Under the view taken by the respondent it would seem that when the evidence had been obtained under his stipulation, the court was put in position where it was impossible to avoid error; for if the evidence was received, he might complain, as he does now, that his constitutional right was violated, and if the court refused to receive it when he was consenting, the respondent would be entitled to have the conviction set aside for that error.

I shall always be ready to preserve in its integrity every constitutional right; but I do not understand that the Constitution is an instrument to play fast and loose with in criminal cases any more than in any other, or that it is the business of courts to be astute in the discovery of technical difficulties in the punishment of parties for their criminal conduct.

A number of special questions were put to the jury, and it is complained that the judge expressed to the jury an opinion on some of the facts covered by them. He was probably not as careful in that regard as he should have been. But we should not be over-critical in such matters, where the circuit judge certainly has some discretion. The judge said to the jury as to these: "Answer the questions put to you, keeping in mind that the answers to these questions should be consistent with the verdict which you find." This, it is urged, required the jury to conform their special findings to the general verdict. But we think the court merely reminded the jury that the general verdict should be in accord with the facts as they found them; an unnecessary caution, perhaps, but certainly not misleading.

I discover no error in the record, and think the conviction should be affirmed.

GRAVES, C. J. and CAMPBELL, J. concurred.

SHERWOOD, J. dissenting.    The respondent was convicted of murder in the second degree in the Saginaw circuit court, and sentenced to fifteen years' imprisonment.

The case comes before us on bill of exceptions for review, from which it appears that the person killed was Augustus Emery, who was acting at the time as special marshal in the village of Chesaning; that respondent was connected with a circus troupe which was giving an entertainment that evening in the village; that during the evening, at a place but a short distance from the circus tent, called the Bowery, some citizens of Chesaning and vicinity were having a dance, and about the time the circus closed two citizens had an altercation, which was soon quieted, and shortly thereafter one of the citizens made an assault upon one of the circus men, named Gleason, who immediately cried out, "Hey, Rube!" (a term claimed to be used as a signal by the circus men for help and a fight at the place from which it came,) and thereupon the circus men, to the number of twelve or fifteen, ran to the Bowery, and rushed in upon those assembled, with clubs and missiles. In the melee which ensued, it is alleged the respondent gave Emery several severe blows with the butt of a whip, from the effects of which he died in a few hours thereafter.

The respondent claimed on the trial that he did not strike Emery, but on the occasion did strike one Wentzel, (who was also acting as an assistant officer in keeping the peace,) and that he did not enter the west end of the Bowery at all that night.

It appears that the respondent was poor, and unable to employ an attorney in making his defense, and counsel was assigned him by the court. Other counsel, however, appear for him in this Court.

Nine errors are assigned by respondent's counsel on the record as presented, four of which relate to the ruling of the circuit judge on the admission or rejection of testimony.

The first exception is to the refusal of the court to allow witness Griswold to state on his cross-examination " what he

had heard of the citizens being drunk and having difficulty with Emery." The matter inquired after was clearly hearsay and immaterial, and properly excluded.

The second and third exceptions relate to the admission of the answers given by the defendant to the following questions on his cross-examination, (against objection of defendant's counsel,) viz: *First.* "You pride yourself on your muscle, dont you,—on your strength?" *Second.* "As a member of the circus, how many different fights with outsiders have you been engaged in?" The answer to the first question was in the negative, and could only be construed in his favor. It could certainly not prejudice the respondent if improperly received. *Richards v. Tozer* 27 Mich. 451; *Beebe v. Knapp* 28 Mich. 71; *Davis v. Bush* 28 Mich. 432; *McDonough v. Sutton* 35 Mich. 1; *Lenox v. Fuller* 39 Mich. 268; *Keables v. Christie* 47 Mich. 594. In regard to the second question, it sufficiently appears that the respondent had introduced evidence tending to show the peaceable character of the respondent and of the other circus men, and the People had the right to give evidence in rebuttal of the respondent's testimony upon that subject, and that offered by the prosecution did nothing more and was properly received. The witness being himself the respondent does not vary the rule upon this subject. *People v. Cummins* 47 Mich. 336.

The respondent's fourth assignment of error is based upon the admission of certain depositions taken before the examining magistrate when the respondent and his counsel were both present, and which were returned to the clerk's office at the time respondent was held for trial. The witnesses, at the time of trial, were not within the jurisdiction of the court. One of the depositions used against respondent was taken in behalf of the respondent, and the other in behalf of the People; and a written stipulation was made between the prosecuting attorney and respondent's counsel, by which these depositions were to be read in evidence on the part of the People, and several others (taken in like manner) on the part of the respondent. Under this stipu-

lation they were all read to to the jury without objection; such objection being made to the same for the first time in this Court. The materiality of the testimony given in the deposition does not seem to be disputed. The question raised by this exception is not entirely free from difficulty. Section 28, art. vi, of our Constitution provides that "In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of less than twelve men in all courts not of record; to be informed of the nature of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and have the assistance of counsel for his defense." The respondent can only be tried by a jury. See Comp. L. § 7947; [How. St. § 9559.] And § 7955 [9568] on same page, says: "No person indicted for a felony shall be tried unless personally present during the trial."

In addition to the provisions in the Constitution above given, section 1 of chapter 243 of the Compiled Laws also provides that "on the trial of every indictment, or other criminal accusation, the party accused shall be allowed to be heard by counsel, and he may defend himself, and he shall have a right to produce witnesses and proofs in his favor and meet the witnesses who are produced against him, face to face." [How. St. § 9072.]

Under these provisions of the Constitution and laws, respondent claims that notwithstanding the stipulation made by the attorney appointed by the court to defend him, and the public prosecutor, he was deprived of his constitutional right of being confronted with the People's witnesses and of meeting those who were sworn and gave testimony against him face to face before the jury which convicted him. The question is thus presented, Could the attorney *appointed* to defend the prisoner waive the constitutional and statutory right of the latter to be confronted with the witnesses against him, face to face?

In civil cases waiver of statutory and even constitutional rights may, many times, arise from the consent of the par-

ties either by stipulation in writing or in open court. *Ship Milwaukie v. Hale* 1 Doug. (Mich.) 306; *Chamberlain v. Lyell* 3 Mich. 448; *Beecher v. Baldy* 7 Mich. 488; *People v. Clark* 33 Mich. 112; *Pierce v. Rehfuss* 35 Mich. 53; *People v. Arnold* 40 Mich. 710; *Mabley v. Judge of Superior Court of Detroit* 41 Mich. 31; *Frankel v. Coots* 41 Mich. 75; *Fraser v. Jennison* 42 Mich. 206; *Stuart v. People* 42 Mich. 255. In civil actions, however, the interests of the parties or litigants alone are involved and to be considered. Not so in criminal cases. In criminal prosecutions other interests intervene, and have to be taken into consideration. The people compose the commonwealth, and the commonwealth has an interest in the lives and liberty of all its citizens, and that interest has been carefully guarded and protected, and the humanity of the law preserved, under an enlightened Christian civilization, in the provisions of our Constitutions, both State and National, and in the statutes enacted thereunder for that purpose. It is truly said by Mr. Justice Strong in *Cancemi v. People* 18 N. Y. 137: "The state, the public, have an interest in the preservation of the liberties and the lives of the citizens, and will not allow them to be taken away without due process of law, when forfeited, as they may be, as a punishment for crimes." Blackstone says (vol. 4 p. 189), the king "hath an interest in the preservation of all his subjects." Courts, in applying the provisions of the Constitution and laws, have ever been very careful that the legal limit intended should not be extended or overreached; and our own Court has said: "It is the duty of courts to see that the constitutional rights of a defendant in a criminal case shall not be violated, however negligent he may be in raising the objection."

In the early history of common-law criminal jurisprudence, while a public prosecutor was engaged to enforce the criminal law against offenders charged with capital crimes, it was made the duty of the court to be counselor of the prisoner, and " see that the proceedings against him are legal and strictly regular." 4 Bl. Com. 355 (Cooley's ed.) And

lest, at any time, through the neglect or caprice of the court, the prisoner should be deprived of the assistance of counsel in making a full defense before the jury, it was enacted by statute 7 Wm. III ch 3 that the prisoner may have counsel in making his defense, not exceeding two in number, to be selected by him and assigned to the service by the court or judge.   4 Bl. Com. 356.   The right of the prisoner to be aided by counsel in making his defense has long been regarded, both in England and this country, as essential to a full and proper administration of justice in criminal cases.   In this country the right is secured in the Federal Constitution (U. S. Const. Am. 6) and in the organic law of nearly every state.   It is a right of which no citizen can be deprived by legislative or judicial action.   "No one has a right, by his own voluntary act, to surrender his liberty or part with his life."   The interest of the accused and that of the State, therefore, alike require its proper enforcement in all cases.   If the prisoner is of sufficient ability he selects such counsel as he desires to defend him ; and if he declines the assistance of counsel the court may or may not assign counsel to aid him, but in such case  usually intrusts the People's interest to the prosecuting attorney alone.   In case the respondent is unable to employ counsel to defend him, his interests and those of the State must be protected and he should be furnished with such aid as may be necessary in ascertaining the truthfulness of the charge made against him, and for that purpose the prosecuting attorney will not alone be allowed to protect him and look after the people's interest, but the court will appoint some suitable member of the profession to assist in his defense.   In England it is the modern practice to permit the respondent to make the selection of counsel for this purpose.   See statute 6 and 7 Wm. III ch. 114 and decisions thereunder.   In this State the court usually designates the person who is to perform that duty.   And he is not at liberty to decline (see *Vise v. Hamilton County* 19 Ill. 78 ;) neither is he at liberty to make a "feeble and heartless defense," and cases may arise when, notwithstanding the assignment of counsel

to defend, it would become the duty of the court to see to it that the prisoner suffers nothing from inattention or haste of counsel thus assigned, or impatience or over-zeal on the part of the prosecution. Cooley's Const. Lim. 335, 336.

In this case it does not appear that the attorney appointed by the court to assist the respondent in his defense was so appointed at the solicitation of the respondent, or that he had any voice in the selection, or that he was willing the attorney should make the stipulation he did, to admit in evidence the depositions which are made the subject of this exception. It is shown affirmatively that the court appointed an attorney to defend respondent eleven days before the trial commenced, and that the stipulation between the attorneys was made before that time; and it does not appear that the prisoner was present when it was made, or that he was ever consulted about it, or, if he had been, that he knew what his constitutional rights were in the matter.

It does not appear that the respondent either signed the written stipulation or knew its contents, or himself admitted in open court that he was willing that the testimony should be read when it was presented to the jury, unless his silence shall be made to speak against him. And while I have no doubt that under certain circumstances, by his own express agreement or that of his chosen attorney, he may make a binding stipulation to waive even his constitutional right to have the testimony of witnesses against him given in open court upon the stand, still, I do not think that such agreement, or the authority of the attorney designated by the court to make the same (as in this case), can be implied from his silence or his failure to object to the deposition when offered before the jury. If this were not so, then the constitutional provisions intended as a safeguard to the accused would become a delusion and a snare to one charged with crime who was not as well versed in the law as the prosecuting attorney or the trial judge. Nothing can be presumed against the prisoner from his silence (while the charge is under judicial inquiry) from the time he is called

upon to plead until its final disposition by the jury. Whart.
Crim. Law § 132. The question we are now discussing
has been before the courts both in England and in this
country. See *Lord Morley's Case* 6 State Trials 770:
*Harrison's Case* 12 State Trials 851; *Regina v. Scaife* 17
Q. B. (N. S.) 238; *Drayton v. Wells* 1 Nott & McC.
409; *Williams v. State* 19 Ga. 403; *Reynolds v. United
States* 98 U. S. 158. I think the depositions were errone-
ously admitted.

The defendant's fifth, sixth, and seventh assignments of
error are exceptions to the court's refusals to charge as re-
quested. The respondent had testified that he did not strike
Emery on the evening of the affray, but did strike one
Wentzel, an officer at the Bowery; and the substance of
these requests was that if the jury found there was no com-
mon understanding among the circus men to do an unlaw-
ful act, but that the men assembled at the Bowery upon
hearing the signal there, and for a lawful purpose, and that
while there respondent struck a man other than Emery be-
cause he supposed the man had assaulted one of the circus
men, and that he then went away without doing anything
else, then the respondent would not be guilty.

We have examined the charge in this case with care and
find it very clearly and forcibly gave to the jury what under
the law constitutes the offense of which the defendant was
convicted, and what under the circumstances of this case
was necessary to be proved in order to produce a conviction.
The facts alluded to in those three requests were called to
the attention of the jury, and while the language of the
requests was not given, I think all that was necessary to
protect the respondent's rights upon the points made in the
requests was plainly stated in the charge of the court.

It is claimed in respondent's tenth assignment of error,
that the court erred in submitting to the jury the question
whether the signal given was or was not for the purpose of
assembling the circus men together to drive the people out
of the Bowery. There was no error in this; there was evi-
dence in the case tending to show they assembled for both a

lawful and unlawful purpose, and the fact in the matter was for the jury.

An important question is raised under respondent's eighth and ninth assignments. The circuit judge requested the jury to answer specifically nine questions which he submitted to them, and at the same time gave instructions as to how they should be answered. It is unnecessary in this case to say whether or not it was proper for the jury to bring in special findings, it being a criminal case. The circuit judge evidently regarded Comp. L. § 6026 [How. St. § 7606] as applicable in criminal cases, but the contrary was held by this Court in *People v. Marion* 29 Mich. 32, and I think correctly, for the reasons given by Mr. Justice Campbell in that case. This being the case, it only remains to consider the questions, with the instructions relating thereto, as given by the court as part of the general charge. The questions all call for the decision of the jury upon questions of fact, which is the legitimate and exclusive duty of the jury. It is especially the duty of the court in a criminal case to allow no person to occupy a seat in the panel who has not all the qualifications for the position, and when such jury is obtained, great care should be observed that in all their deliberations they remain uninfluenced by the court as to the view they should take of the testimony.

In submitting the question to the jury in this case for special findings, I do not think such caution was observed. While the charge is in the main fair and correct, I think several of the suggestions of the court in presenting the questions to the jury were objectionable, and encroached upon their province. These questions submitted, and the statements made by the circuit judge in regard to each at the time, and the several answers made by the jury thereto, are as follows:

*First.* " Did the circus men first enter the Bowery promiscuously and at different points?" *By the Court.* " To the first question you will answer, yes or no, as you find the evidence. As I look at it,—but that is a question for you,— it tends to show that they did enter at different points promiscuously." *Answer by Jury.* " Yes."

*Second.* " Were the circus men engaged in their work when the signal, ' Hey, Rube !' was given ?" *By the Court.* " In regard to the second question, there is evidence tending to show that some, if not all of them, were engaged in their work when the signal was given. You will answer that question, yes or no, as you may find the fact to be. If you find some of them were engaged, and as to the others you are unable to determine from the evidence, answer it according to the fact." *Answer by Jury.* " The majority were."

*Third.* " Did the defendant, in response to said signal, proceed to the Bowery ?" *By the Court.* " Did the defendant, in response to the signal, proceed to the Bowery ? He says himself he did. That is the testimony of the defendant ; so you will have no difficulty in answering that yes." *Answer by Jury.* " Yes."

*Fourth.* " Did not respondent go at first directly to the Bowery, and that without consultation with any one until he got there ?" *By the Court.* " In regard to the fourth question, there is no evidence that he consulted with any one before he got there. The question should be answered yes." *Answer by Jury.* " Yes."

*Fifth.* " Did Murray enter the Bowery at the west end, and at the beginning of the affray, with other circus men ?" *By the Court.* " In regard to the fifth question, there is evidence in the case tending to show that he entered the west end. You know how many witnesses testified to that. Some of the witnesses testified that he entered at the east end ; and you will remember his own testimony on that point. You may answer that question as you find. If he did enter at the east end, and his own evidence is true, then he either entered at the west end and passed out again and entered at the east, or vice versa, and thus he entered at both ends. *Answer by Jury.* " Yes."

*Sixth.* " Did respondent give the fatal blow to Emery ?" *By the Court.* " Answer the sixth question yes or no." *Answer by Jury.* " Yes."

*Seventh.* " Did respondent strike Emery at all ?" *By the Court.* " Answer the seventh question yes or no." *Answer by Jury.* " Yes."

*Eighth.* " Did respondent strike Wentzel in the Bowery?" *By the Court.* " Did the respondent strike Wentzel in the Bowery ? If you believe the prisoner's statement, he did. In that case you will answer yes. If, on the contrary, you do not believe his evidence, and you do not find there is any evidence in the case that authorizes you to find and

answer yes, then you will find and answer no." *Answer by Jury.* "No."

*Ninth.* "Was not the whip in question the one which respondent had in common use, and did he not have it with him when the signal was given?" *By the Court.* "Answer the ninth question yes or no. The defendant says he had the whip. The other testimony tends to show that he did; that he had it in coming out, and he had it with him when he went to the Bowery. *Answer by Jury.* "Yes."

To the first question, the court says, substantially: "As I look at it, the evidence tends to show sufficiently that your answer should be yes." And the remarks of the court on the second question are substantially to the same effect. It is true, he says, "you will find as *you* find the facts to be;" but they should be permitted to thus find without any expression of his views of what the evidence tends to show upon that point. If there is evidence in the case upon the subject, the court may properly call their attention to that fact; but what it shows, or tends to show, is strictly the province of the jury to determine, when the question comes up, as in this case.

The answer to the third question, if made according to the direction of the court, certainly was against the accused; and whether the jury believed the respondent or not, they were subsequently required to answer the question, "Yes."

The same is true in regard to the fourth question.

The remarks of the court in reference to the fifth special request were clearly improper, and could hardly fail to have done mischief with the jury. Whether the defendant entered the Bowery at the east end or not became very material and important, as he was able to show that, if he entered at that end, he did not strike Emery. From the suggestions and arguments made by the court, the jury must have been led to understand that reasonably only an affirmative answer could be given. All idea that a reasonable doubt could exist as to what answer should be given seems to have been excluded. I think, in these remarks, clearly there was error to the respondent's prejudice.

The peremptory manner in which the court directed the

answers to be given to the sixth and seventh questions also excludes all idea that with the jury there could be any reasonable doubt. In fact, I think the remarks of the court clearly indicate that upon these questions there could be no reasonable doubt. It is highly improper to use any language in instructions to a jury in a criminal case which may be susceptible of such a construction.

I fully agree with Mr. Justice Marston in *People v. Lyons* 49 Mich. 82, when he says: "It is well known in practice that the opinion of the trial judge has very great weight with the jury, and very properly so, and for this reason so much more careful should the court be to not assume a part of their province." I confess I have never felt quite satisfied with the ruling upon this subject in *Sheahan v. Barry* 27 Mich. 217. I am aware that the rule laid down in that case is supported by the English cases cited, and many of the American decisions. Of course, the latter rest entirely upon the former. I regard both, however, as equally in conflict with the object and design of those who gave us our system of trying questions of fact by jury. The object was to submit all questions of fact to the decision of twelve men, whose judgments should be uninfluenced by the court or by fear or favor of parties.

It is conceded by all that the jury watch closely every word that falls from the nisi prius judge in the trial of a cause, and are usually anxious to know his views upon the facts, and his direction as to the law of the case (which they always accept as correct) is seldom held in higher estimation by them than his views upon questions of fact when once ascertained. It is a part of the theory of jury trials that the opinion of the trial judge upon the facts shall in no manner affect or influence that of the jury. But how can it fail to do so (so long as his opinion has their respect) if he is permitted to disclose it to the jury? If it is not intended it should influence the jury, why give it to them at all? In my judgment it is idle to say that the jury are at liberty to do as they please, notwithstanding the views of the judge, so long as the judge has any influence with them.

The average juryman, with his little experience in passing upon closely contested matters of fact, usually has neither the confidence in his opinions nor sufficient firmness of character to oppose his views to those of the circuit judge, coming as they do from one whose learning, experience and position he regards as furnishing superior advantages in arriving at correct opinions on the testimony, and whose decisions and instructions he is not permitted to question. When the judge gives his views upon questions of fact, the mischief has been done, and it is not in his power, by anything he may afterwards say, to fully eradicate the error. This I believe to be the experience of all practitioners; and I think there is no safe way of preventing encroachment upon the province of the jury and making certain the duties of the court in the trial of causes, except in entirely excluding the personal views of the trial judge upon questions of fact.

The suggestions of the court in presenting the eighth and ninth questions are subject to the same objection as the others, in failing to give the respondent the benefit of reasonable doubt, if any existed in the mind of the jury. In none of the instructions of the court concerning any of these questions is it stated what would be a proper answer in case they were in doubt about the fact queried after, or in case they were unable to agree as to what the testimony proved in regard to it. If it were proper to make any suggestions at all, this should have been done. In his statements upon presenting the nine questions the court told the jury that their "answers to these questions should be consistent with the verdict." The court had already suggested, as we have seen, the form of the answers to be given. I think this was erroneous and clearly within the decision of this Court in *Cole v. Boyd* 47 Mich. 98.

The judgment should be reversed and a new trial granted.