PEOPLE *v.* SNYDER.

1. CRIMINAL LAW—TRIAL—CROSS-EXAMINATION—WITNESSES.

   On the trial of a respondent charged with taking indecent liberties with a child, the prosecutor is not justified in asking a character witness, on cross-examination, as to opinions formed after learning about the accusation, or as to its effect on his opinion.

2. SAME—CHARGE—OPINION EXPRESSED BY COURT.

   It is error for the court to indicate to the jury his opinion as to the guilt of the respondent in a criminal case; so that the court improperly stated to the jury in the course of his instructions, "The question is asked, why not bring all the people in the theater up here to prove that, words to that effect. Of course, the offense was not committed on the stage; it was not part of the performance that afternoon; and it is possible and very likely that he tried to commit it so nobody else would see him," etc.

Exceptions from the recorder's court of Grand Rapids; Stuart, J. Submitted January 17, 1913. (Docket No. 117.) Decided February 18, 1913.

Ray Snyder was convicted of taking indecent liberties with a minor female child. Reversed.

*Earl F. Phelps,* Prosecuting Attorney, and *Louis T. Herman,* Assistant Prosecuting Attorney, for the people.

*Edward N. Barnard,* for respondent.

KUHN, J. The information in this case charges the respondent with taking indecent and improper liberties with a girl under the age of 14 years.

It is claimed that the offense occurred in the Idea Theater, a moving-picture showhouse, in the city of Grand Rapids. On the trial the respondent, in his defense, attempted to establish his previous good reputation, and produced Mr. Thomas Hefferan as a witness, who testified as follows:

"Direct examination by Mr. Barnard: I am president of the People's Saving Bank; I am acquainted with Mr. Snyder; I have always considered his reputation as very good; I have known him for about 40 years or so, since the Civil War.

"Cross-examination by Mr. Herman: I have been in the courtroom and heard the story of the girl.

"*Q.* If the story of the girl is true, you would not consider a man's reputation—

"*Mr. Barnard:* (interrupting): I object to that. Just a minute.

"*Q.* You would not consider a man like that of good repute, would you?

"*A.* Not if it is true.

"*Mr. Barnard:* I want to object to that.

"*The Court:* Overruled.

"*Mr. Barnard:* An exception.

"*Mr. Herman:* That is all.

"Redirect examination by Mr. Barnard:

"*Q.* Do you know what his reputation is as to his character in the community?

"*Mr. Herman:* Just a minute.

"*Q.* He resides in?

"*A.* How?

"*Q.* Is that good or bad? Do you know what his gen-

eral reputation for character is in the community in which
he resides?

"*The Court:* Character in what regard?

"*A.* I would consider his moral character good.

"Recross-examination by Mr. Herman: It is 22 years
ago since I lived anywheres near him, when I was a resi-
dent of Eastmanville, Ottawa county; he lived at the
Soldiers' Home in the city here. I don't know anything
about him for the last 20 years, except as I have done
business with him; I haven't heard anything against
him.

"*Q.* (*Mr. Herman*): You talked to a single person in
the community in which he resides; that is, the Soldiers'
Home?

"*A.* I don't know as I ever talked with anybody.

"*Q.* (*Mr. Barnard*): Never heard anybody say any-
thing against him?

"*A.* No.

"*Q.* (*Mr. Herman*): And never heard anybody say
anything for him?

"*Mr. Barnard:* What is this, a dialogue?

"*Q.* (*Mr. Herman*): How far do you live from the
Soldiers' Home?

"*A.* Probably six miles.

"*Q.* It is a pretty strong statement when you say you
know his reputation and what people say about him—
what his neighbors say of him?

"*A.* I say only what I know of him.

"*Q.* What you know personally?

"*A.* Yes.

"*Q.* That is not reputation.

"*A.* What I know personally of his reputation.

"*Q.* You don't know what his reputation is since he
has been at the Soldiers' Home?

"*A.* Only what I know.

"*The Court:* A man's reputation is what people say
about him.

"*A.* I never heard anything said about him wrong."

It was improper for the prosecuting officer to cross-ex-
amine this witness with reference to opinions formed sub-
sequent to the date of the crime with which respondent
was charged; and, although we will not say that it would
be reversible error in this case, nevertheless, it is contrary
to the well-established rules of evidence. This matter is

fully discussed by Mr. Justice STONE in the case of *People* v. *Huff, post,* 620 (139 N. W. 1033), handed down herewith.

In his charge to the jury the judge said:

"The question is asked, why not bring all the people in the theater up here to prove that? words to that effect. Of course, the offense was not committed on the stage; it was not a part of the performance that afternoon; and it is possible and very likely that he tried to commit it so nobody else would see him, and very likely there may not have been other witnesses that saw it at all."

The direct statement of the court, "It is possible and very likely that he tried to commit it so nobody else would see him," it seems to us, is practically saying to the jury that respondent did try to commit the offense with which he was charged. The respondent having denied the charge, it was for the jury to determine that fact from all the evidence, and improper for the trial judge to give the jury his own opinion as to the guilt or innocence of the accused. This was error. *People* v. *Lyons,* 49 Mich. 78 (13 N. W. 365); *People* v. *Murray,* 52 Mich. 288 (17 N. W. 843); *People* v. *Gastro,* 75 Mich. 127 (42 N. W. 937); *Cronkhite* v. *Dickerson,* 51 Mich. 177 (16 N. W. 371); *Letts* v. *Letts,* 91 Mich. 596 (52 N. W. 54); *Sterling* v. *Callahan,* 94 Mich. 536 (54 N. W. 495); *Valin* v. *McKerreghan,* 104 Mich. 213 (62 N. W. 340); *Preston Nat. Bank* v. *Insurance Co.,* 115 Mich. 511 (73 N. W. 815); *Fors* v. *Fors,* 159 Mich. 156 (123 N. W. 579).

There is no merit in the other assignments of error. The conviction is reversed and a new trial granted.

STEERE, C. J., and McALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred. MOORE, J., did not sit.