## PEOPLE v. DUPREE.

1. CRIMINAL LAW—STATUTORY ASSAULT—RAPE—EVIDENCE.
   Where respondent's counsel, in a prosecution for assault with intent to commit rape on a child of 13 years of age, inquired of a school teacher what age the prosecutrix had given at the time she attended school to the witness, and it appeared that the testimony of the witness would have covered the contents of a record which had been destroyed, and was made up from statements of a person unknown to witness, the answer was correctly excluded.

2. SAME—CHARGE TO JURY.
   Instructions to the jury tending to explain or excuse testimony of the prosecutrix and her appearance or embarrassment on the stand, portions thereof tending also to enhance the weight of testimony given by certain witnesses for the prosecution and intimating that the accused was of a class of evil doers who desire to break the law in secret, was argumentative, harmful, and invaded the province of the jury.

3. SAME—INDECENT LIBERTIES—INFORMATION.
   Counts for attempted rape and for taking indecent liberties with a female under 14 years of age, may be joined in one information and both include assault and battery; testimony having a tendency to prove the major offense was not necessarily inconsistent with a conviction for the other crime charged where the testimony of the prosecutrix tended to establish the first accusation and the other witnesses for the people gave testimony in support of the lesser offense.

Exceptions before sentence from the superior court of Grand Rapids; Stuart, J. Submitted April 17, 1913. (Docket No. 128.) Decided May 28, 1913.

John Dupree was convicted of taking indecent liberties with a female under 14 years of age. Reversed.

*Louis T. Herman*, Assistant Prosecuting Attorney, for the people.

*Dunham & Dunham* and *John J. McKenna*, for respondent.

BROOKE, J. The first count of the information in this case charges the respondent with having committed an assault upon a girl 13 years of age with intent to commit rape. The second count charges the respondent with taking indecent and improper liberties with the person of said child without committing, or intending to commit, the crime of rape. Respondent was convicted under the second count and has removed his case to this court for review upon exceptions before sentence.

The respondent, a man of 68 years of age, had become acquainted with the child through buying papers from her upon the streets of Grand Rapids. On June 22, 1911, respondent went to Muskegon, where he claims to have met the girl by chance. He says he urged her to return to her home in Grand Rapids, but that she refused to do this because of alleged bad treatment from her parents. It was there agreed between them that respondent should secure a room for her and that she should return to Grand Rapids the following day. This she did not do, but did return on Saturday, the evening of the 24th. Respondent met her soon after she alighted from the car and, having rented and paid for a room on Bostwick street, he immediately accompanied her there. He introduced the girl to Mrs. Jones, the landlady, as his niece, and made an appointment to call on Monday, the 26th, at about 2 o'clock p. m., for the purpose, as he testified, of taking the girl to a department store in search of employment for her. On the following Monday respondent met the girl down town, and one Kennedy, a private detective, noticed them conversing together.

Kennedy's suspicion being aroused, he followed the pair (the girl walking some distance in advance of respondent) to the house on Bostwick street. Respondent did not enter the house with the girl but followed her in after a short interval. Kennedy, in company with a Mr. Randolph, for whom he had sent, followed respondent into the house after waiting 10 or 15 minutes. Passing immediately upstairs they entered the room, which they had been advised was occupied by the girl. It is their claim (denied by respondent) that the door was locked and that they broke it open. Upon entering, respondent was found with his hat, coat, vest, collar, and tie off. The girl, likewise, was partially disrobed. Kennedy sent for a reporter, and upon his arrival took the girl into another room and there questioned her in the presence of the reporter. The respondent was at once arrested. Upon the examination before the magistrate the girl, in detailing what had occurred on the day in question, and upon the preceding Saturday, gave accounts so at variance with each other as to render her testimony practically valueless, except as to those matters in which she is corroborated by circumstances or by the testimony of other witnesses. Respondent claimed never to have laid his hands upon the girl, and insisted that his actions in the premises were induced by humane and charitable motives. He attributed his own condition as to dishabille to the excessive heat, and that of the girl to the fact that she was preparing to accompany him down town in a search for work. He claimed that she was changing her dress behind a screen in one corner of the room at the moment the intruders entered the room. According to one version of the facts given by the girl, the respondent (having in mind the girl's age) should have been convicted of rape, had he been so charged. According to another version, an assault with intent to commit that crime was clearly proven. According to still other

statements of the child, respondent might be found guilty of taking indecent liberties without intent to commit the crime of rape. Testimony introduced on behalf of respondent tended to establish the fact that he was, at the time the alleged offense was committed, impotent and had been in that condition for some time. The circumstances and the evidence offered by the people, so far as either tended to support the statements made by the girl, indicated that, if guilty of any offense, respondent was guilty of the lesser crime.

There are 28 assignments of error which are discussed by respondent's counsel under the following heads:

*First.* Errors relating to the admission and rejection of testimony, and rulings of the court thereon.

*Second.* Errors contained in the charge of the court.

*Third.* Errors relating to the refusal of the court to allow respondent's motion to arrest judgment, and his reasons therefor.

The first assignment of error is based upon a ruling of the court admitting testimony relative to the conversation between Kennedy, the girl, and witness Swanwick in the presence of respondent in another room. The answer admitted over objection was as follows:

"Not so far as I heard; no, sir. She made some statements that constituted a story, I guess. She first made statements in response to Mr. Kennedy's questions in the presence of Mr. Munshaw. I was present when the statements were made. Mr. Loucks came in during the course, I guess. I think I heard all that was said."

It will be noted that the witness did not relate any of the conversation. Respondent was not prejudiced by the testimony.

The next assignment of error argued on behalf of respondent relates to a ruling of the court excluding

the answer to the following question propounded to Miss Brown, a school teacher, at whose school·the little girl had attended.

"*Q.* Do you know what she gave the age of her birthday?"

The subsequent examination of this witness discloses the fact that respondent sought to have her testify from memory to the contents of a record which had been destroyed. It likewise appears that the witness had no knowledge as to who had furnished the information contained in the record. The testimony was properly excluded.

Respondent assigns many errors upon the charge of the court. Some portions of the charge follow:

"Now there are just a few rules of law that I want to give you, but I think before taking those up I will take up one or two other things. I want to refer to two or three or one or two claims that have been made. I don't like to comment upon the arguments of counsel, and I don't do it as a rule, unless I fear that it may be misunderstood and give you the wrong impression and under those circumstances I simply refer to it to correct anything that might appear to be a wrong impression. It has been argued here, speaking of these counts, that under the testimony of the girl, who said here that he had intercourse with her, that if she told that story to the prosecutor he should have prosecuted for rape and not for assault with intent to commit rape or the other offenses, and that the prosecutor did not believe the story and did not dare to charge that offense. Now, of course, whatever may have prompted the prosecutor in charging the offense I don't know, but where there are various offenses committed, or various statutes may apply to what took place, of course, it is left to the judgment of the prosecutor to determine upon what charge he will proceed. But I don't know why he would not dare to charge rape. He could have put in, as I understand the law, a charge for rape here in connection with the other two counts; the three go together and could all be put in the information, and a failure to prove one does not

necessarily affect the proof upon the other counts.  In
criminal cases and in civil cases the pleadings are mere
statements in different ways of your form of action,
and for fear you may not hit it one way you put in
another to make it sure.  You do not know what the
proof will be until you get to it, and so it is natural
to charge offenses before the trial in various ways,
and the prosecutor would be entirely justified in charg-
ing all three of these offenses here; in fact, under the
charge of rape the charge of assault with intent to
commit rape can be found even although it is not
charged.  Then I want to refer to one or two other
matters, and first the testimony of this little girl.
Now, bear in mind that in trying a case of this kind
the character of the witness as to chastity and morality
is not to be considered.  Of course, the character of
any witness in regard to truthfulness and veracity is
always an important matter to be considered, and I
charge you in regard to it that the matter of chastity
and morality does not cut any figure, except as it might
possibly affect her truth and veracity.  No matter how
bad the girl is morally, if this took place at her in-
stigation and by her bringing about, and you are
satisfied of that fact from the evidence as to either one
of these charges I have spoken of, the respondent is
guilty.  And I simply call your attention (as there has
been a claim of considerable contradictions on the part
of the witness, the little girl) that in considering her
testimony you must, of course, consider her age.  At
the time this testimony was given in the lower court
it is claimed by the people she was yet under 13 years
of age.

"*Mr. Herman:*  Under 14.  She was 13.

"*The Court:*  Yes.

"*Mr. Herman:*  I thought you honor said under 13.

"*The Court:*  The charge is she was under 14, or
wasn't she?

"*Mr. Dunham:*  13 in November before.

"*The Court:*  Well, pardon me.  She was a girl then
13 years of age, if the claim on the part of the prose-
cution is found to be correct, and I simply call your
attention to the fact of her age, her natural embar-
rassment, if she had any sense of decency or anything
left, and probably her first experience (I don't know
that), her first so far as this is concerned, in a crowded

courtroom with a lot of people gazing at her, and attempting to detail an affair of this kind, that it would naturally somewhat embarrass her and perhaps confuse her, and then the fact that in being questioned by the one side, the people's attorneys, when she was simply told to state what took place, while on the other hand the respondent's attorneys can ask leading questions and put questions to her which may be suggestive. Now, of course, I am speaking of that not to say that it took place, gentlemen, but it is one of the things that should be considered in making up your verdict, and the proposition is up to you to determine whether she was lying about it or whether these contradictions occurred in some other way. It has been commented upon that she was kept away from being interviewed. Now, under some circumstances, unless improper influences are brought to bear upon her by the people, that is not an improper act, to keep her from being interviewed, because in many cases people charged with crime would go to any length to get witnesses away or to change their testimony, and, if they are kept where they cannot be approached by people interested in having the case fall through, it is not improper in itself if she has not been improperly coached and put up to tell something untrue by the people having her in charge. Of course, that is for you to determine, whether these officers, the people who have had her, have been doing improper things in that regard. Comment has been made and considerable argument and heat has been shown in this case that it should be started by a private detective. There is a feeling, I am sure, in the community by quite a large class of people against detectives, and especially private detectives. I am inclined to think that that feeling is largely with people that, perhaps, may fear they would be caught some time in some improper act, for I am sure that if people are law-abiding they need not have any fears from private or public detectives or any other kind of detectives. If a man is not inclined to break the law, he never will be meddled with, or very rarely, it seems to me, and the fact that people when they are out attempting to get evidence of the fact that crime is being committed— We all know that a great many crimes are committed, and they are committed secretly; people in committing crimes do

not go on the corner of Monroe street and tell anybody what they are doing, but they are usually committed in secret, and it is always charged that police officers ought to go with their uniform on and sheriffs with their badge on the lapel of their coat and tell people, before they do anything, what they are about; and the fact that detectives do sometimes have to employ a ruse to get into places where crime is being committed should not be considered as anything improper if their motives are right in doing it; and the mere fact that they conceal themselves or their identity is not a fact to be found fault with."

It is urged that these instructions were erroneous for several reasons. We are of opinion that the exceptions thereto are well taken. The language used is clearly argumentative. The discrepancies in the testimony of the girl, the people's principal witness, are minified and measurably excused. The general remarks of the court as to private detectives, law-abiding people, and those inclined to break the law were in our opinion erroneous. The jury could scarcely fail to gather therefrom a certificate of character for the detective witnesses and an impression that in the opinion of the court the respondent was one of that class of evildoers who entertain a feeling against detectives because they desire to break the law in secret.

It is the exclusive province of the jury to weigh the testimony and to draw inferences therefrom, and argument upon the facts by the court is not permissible. *People* v. *Gastro,* 75 Mich. 127 (42 N. W. 937) ; *People* v. *Clarke,* 105 Mich. 169 (62 N. W. 1117) ; *People* v. *Holmes,* 111 Mich. 364 (69 N. W. 501) ; *People* v. *Brown,* 142 Mich. 622 (106 N. W. 149) ; *People* v. *Durham,* 170 Mich. 598 (136 N. W. 431).

It is finally urged on behalf of respondent that the evidence on behalf of the people tended to show the guilt of the respondent under the first count only, and that it was inconsistent with his guilt under the second count. The two counts may properly be joined in one

information, and both include an assault and battery. *People* v. *Partridge*, 86 Mich. 243 (49 N. W. 149); *People* v. *Sheffield*, 105 Mich. 117 (63 N. W. 65). As before pointed out, some portions of the girl's testimony, if believed, would indicate respondent's guilt of the crime of rape, or at least with an assault with intent to commit that crime, while other portions might very well lead the jury to believe he was guilty only of the lesser offense charged. Such evidence as the people introduced, outside the girl's testimony, tended to show guilt under the second count rather than under the first.

The judgment is reversed and a new trial ordered.

STEERE, C. J., and MOORE, MCALVAY, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.