PEOPLE *v.* JANSMA.

1. CRIMINAL LAW—RAPE—EVIDENCE.

Upon the trial of a prosecution for attempted rape, evidence of a third party concerning the appearance of the complaining witness, who, on recovering consciousness, ran screaming from her house to a neighbor's, was not objectionable because time enough had intervened between the attack and the time when the witness saw her, to permit an appearance to be feigned, when the assault was not denied and the testimony of the complaining witness harmonized with the facts so claimed and shown.

2. EVIDENCE—TRIAL—CROSS-EXAMINATION—CHARACTER WITNESSES.

Respondent, charged with attempted rape, introduced testimony in support of his previous good reputation, the prosecuting attorney asked one of the character witnesses if he would approve of the alleged actions of respondent; the witness answering in the negative; and the prosecutor further inquired if he should hear of the accused throwing a girl to the floor, dragging her into another room and choking her into insensibility, whether he would then consider his reputation good. The witness replied, "No," under the objection of the attorney for respondent. The judge also stated that intoxication was not a defense. On the argument this examination was made the basis of prejudicial and unfair inferences by the prosecuting attorney. *Held,* that the conduct of the prosecuting attorney amounted to reversible error, and the statement of the trial judge was prejudicial.

3. CRIMINAL LAW—EVIDENCE—TRIAL.

Cross-examination of a character witness concerning the effect which information that respondent had committed such an offense as he was charged with, would or did have upon his opinion, is improper.

4. WITNESSES—CRIMINAL LAW—INDORSEMENT ON INFORMATION.

The names of witnesses called to impeach a respondent by the public prosecutor, who had no means of knowing that such witnesses would be material at the time the information was filed, are not required to be indorsed upon the information.

5. CRIMINAL LAW — INSTRUCTIONS TO JURY — ARGUMENTATIVE
     CHARGE—WITNESSES—COMMENT.
        It was erroneous to refer in the charge of the court to the
        complaining witness and to attempt to explain her testi-
        mony that she did not want to press the prosecution, on
        the theory that she shrank from publicity or notoriety.

Exceptions before sentence from the superior court
of Grand Rapids; Stuart, J. Submitted April 23,
1914. (Docket No. 166.) Decided June 1, 1914.

Peter Jansma was convicted of assault with intent
to commit rape. Reversed.

*Grant Fellows,* Attorney General, *Earl F. Phelps,*
Prosecuting Attorney, and *Louis T. Herman,* Assist-
ant Prosecuting Attorney, for the people.

*Cornelius Hoffius* (*L. J. Gringhuis,* of counsel), for
respondent.

OSTRANDER, J. Respondent stands convicted of the
charge of assaulting with intent to ravish and carnally
know an unmarried woman, aged 20 years. For the
people the testimony tended to prove that the com-
plaining witness lived at home with her father,
mother, and an aunt; that respondent had for some
10 years supplied the family with milk, calling at the
house daily, usually between 12 and 1 o'clock. He was
a married man, on terms of friendly intimacy with the
family, called the complaining witness Hazel, and she
called him Peter. He had always conducted himself
respectfully and in a gentlemanly manner, entered the
house without knocking, and frequently engaged in
conversation with members of the family. On the day
in question, November 22, 1912, he called with milk
several hours later than was usual. Hazel was alone,
engaged in baking or cooking in the kitchen. Re-
spondent asked permission to use the telephone, and
received it, but whether he used it does not appear.

He inquired for the girl's mother, and learned that she was away from home. After spending some minutes in the house, his manner and speech attracting no particular attention, without preliminary quarrel, solicitation, or proposal, he seized Hazel, threw her on the floor, and a struggle ensued. There is no testimony tending to prove that he said anything to her except, "Listen to me, Hazel," during the struggle. Hazel became unconscious, and when she recovered she was lying upon the cellar stairs and landing, her hair down, her hairpins broken, her lower lip and neck bruised, her tongue swollen. During the struggle she screamed, and respondent choked her. How she came upon the cellar stairs does not appear. She made immediate complaint. Respondent had gone. It does not appear that respondent at any time made any proposal to her except the one stated; that he kissed or caressed her; that he took any liberties with her person. The condition of her clothing indicated that he had not disturbed it. He did not violate her.

For the respondent (and he himself gave testimony) the fact that an assault of some nature was made upon the young woman is conceded. The intent with which it was made became the vital question in the case, respondent expressly denying that he at any time desired or sought to have sexual intercourse with the complainant, or assaulted her for that purpose. But he says that he had done an unusual thing that day in drinking to excess with persons on his route who were convivially inclined; that in consequence he became dazed, neglected to supply all of his customers, had an altercation in a barber shop, and conducted himself in a manner wholly different from his usual conduct and behavior. He does not recollect the details of the episode with Hazel beyond this: That he used violence towards her, and, upon somewhat appreciating what he had done, begged her to

forgive him and to listen to his explanation. I am stating this in a very general way, but sufficiently to make plain the real issue made by the testimony. Character witnesses were produced by him, and these, with the complaining witness herself, make him out, previous to this occurrence, a very decent and respectable man, industrious and sober, of good moral character, and on good terms with his own wife.

A motion for a new trial and in arrest of judgment was denied. There are 23 assignments of error, not all of which deserve attention.

A witness who said she heard the complaining witness screaming and saw her very soon after, going at once to the place where she was, was asked by the prosecuting attorney to describe everything she saw and noticed. Over objection and exception, the witness detailed the appearance of the complaining witness. On cross-examination she went into details. It is said, in argument, that because the complaining witness had gone from her own house to a neighbor's and time enough had intervened the assault and the time when the witness saw her to permit an appearance to be manufactured, the testimony was improper and unfair to respondent. As has been stated, there appears to be no denial of the fact that respondent assaulted the complaining witness. The nature of the assault described by the complaining witness is in harmony with the visible results of it as described by the witness in question. And her cross-examination tended strongly to prove that respondent had not disturbed the clothing or taken liberties with the person of the assaulted woman. Beyond this it appears that the complaining witness on recovering consciousness fled at once to the neighbor's house, screaming, and that the witness in question, hearing her scream, went at once to the house to learn what the trouble was. The testimony was competent.

181 Mich.—5.

A character witness called for respondent had testified that respondent's reputation in the neighborhood where he lived was known to the witness, and that his reputation for decency, morality, truth, and veracity was good. He had known him five years and lived in the next house, never saw him intoxicated. Upon his cross-examination he was asked the following:

"*Q.* You wouldn't approve of the facts as exist in this case, if they are true, would you?

"*A.* If they are?

"*Q.* Yes, you don't approve of that, do you?

"*A.* No; no, sir.

"*Q.* Now you say you have daughters of your own?

"*A.* Yes, sir.

"*Q.* If a person—if you heard of this respondent going to a place, throwing a girl down on the floor and then taking her and dragging her into a pantry and there choking her into insensibility and then leaving the place and going away, would you consider a man's reputation for decency and morality was good that would do that?

"*Mr. Hoffius:* Just a moment, it is not a proper question, your honor.

"*Mr. Herman:* I have a right to know what he considers as decent.

"*Mr. Hoffius:* He testifies to a man's reputation—

"*The Court:* He may answer it as tending to show his bias, or interpretation.

"*Mr. Hoffius:* No one knows how human beings do things at times when they are not themselves.

"*Mr. Herman:* I want to know what this person's idea of decency and morality is.

"*The Court:* A voluntary intoxication would not excuse a man from committing a crime.

"*Mr. Hoffius:* He may still have a good reputation for decency and morality.

"*The Court:* He may have prior to that, he is asking him simply if he approved of it.

"*Mr. Hoffius:* Reputation is put in for the purpose of showing the improbability of a man doing something that is contrary to every element in his life, that is the purpose of it. Now you cannot take the par-

ticular offense for which he is charged and measure his reputation by that.

"*Mr. Herman:* He admits doing these things.

"*Mr. Hoffius:* He hasn't admitted anything yet, he hasn't been on the stand yet.

"*Mr. Herman:* Under your statement he did.

"*The Court:* It is asked simply to test the view of the witness and his friendship and his bias and such things.

"*Mr. Hoffius:* Exception.

"*A.* If he did—not.

"*Mr. Hoffius:* Would you expect Peter Jansma to do it?

"*A.* No, sir.

"*Mr. Herman:* You wouldn't expect him to do this four or five times before he would be convicted either, would you?

"*Mr. Hoffius:* Just a moment; that is an improper question.

"*The Court:* Oh, I think that is an improper question, both improper. Lawyers always want to get in a lot of things that are not proper."

Plainly, the cross-examination of this witness was made the occasion for an argument to the jury, unfair and prejudicial to respondent as well as insulting to the witness. The witness had already testified, without objection, that he did not approve of conduct such as the people's testimony tended to prove. The reasons given for continuing the examination were flimsy coverings of the real purpose. Just why it was made the occasion for the remark of the court that "a voluntary intoxication would not excuse a man from committing a crime" is not apparent. The principle stated and applied in *People* v. *Snyder,* 173 Mich. 616 (139 N. W. 1036), and *People* v. *Huff,* 173 Mich. 620 (139 N. W. 1033), cases which were tried in the same court, was violated by this cross-examination and the argument which accompanied it. See, also, *People* v. *Laird,* 102 Mich. 135 (60 N. W. 457). It was an attempt by improper means to then and there meet and render of no value the character evidence produced

by respondent. It is admitted in the brief for the people that this cross-examination was improper, but stated that the prosecuting attorney was provoked into asking the questions by the conduct of defendant's attorney in examining another character witness previously sworn. It is said, too, that the court guarded the respondent's rights by the statement made at the end of matter above quoted. The court ruled directly upon the original objectionable question, admitting the testimony. The court had ruled differently when a similar question was asked of a witness earlier examined. It was error, and the reading of the colloquy shows it was not cured, nor attempted to be cured; nor was there any objection made to the testimony which is said to have provoked the prosecuting attorney.

Assignment of error No. 5 relates to testimony of defendant, who was asked whether he was abusive of his horses when he was sober. He answered. An objection then made was sustained, but the answer was not stricken out.

Considerable time and much argument was used in an effort of the prosecuting attorney to impeach the respondent. An examination of the whole record upon the subject discloses that finally the proper practice was pretty well observed, and no reversible error committed. The names of the witnesses called for this purpose, three in number, were not indorsed upon the information, and for this reason objection was made to receiving their testimony. The matter testified to by them was proper to be introduced after the defense had rested and the theory of the defense had been disclosed. This theory and the testimony to be offered in its support cannot always be anticipated by the prosecuting officers, for which reason they cannot know what witnesses may be required to rebut the testimony for the defense. And we think it sufficiently

appears that the prosecuting officers in this case could not have known when the information was filed that the witnesses called in rebuttal were material witnesses. In principle the point is covered in *Hill* v. *People*, 26 Mich. 496.

The charge of the court is criticised. We may say here that it was not error for the court to refuse to eliminate the more serious charge. The court could not have properly ruled that there was no testimony sustaining the serious offense charged in the information. It is contended that the charge was argumentative, and that the argument made therein was unfair to respondent. No requests to charge appear in the record, and no modification of the charge given appears to have been requested. The charge is argumentative. See *People* v. *Dupree*, 175 Mich. 632 (141 N. W. 672), and cases cited. A particular argument is noticed. The complaining witness had testified, in substance, that she told the wife of respondent that she—

"Wouldn't have pushed the case but for others; that is the way I felt about it; I hated the notoriety. It is through others that the case has gone as far as it has; it wasn't my wish at all."

She had testified that she felt that respondent was going to kill her. She denied making certain other statements, and denied that her mother had made certain statements, whereupon respondent called a witness, who testified as follows:

"*Q.* Whether or not you asked, or Mrs. Jansma asked in your presence and in the presence of Mrs. Crater and Miss Crater, what about that rape that I saw in the paper last night?

"*A.* Yes, sir.

"*Q.* Whether or not Mrs. Crater answered that he had not committed any rape?

"*A.* Yes, sir; and the girl then spoke up and said, 'No, and he didn't try to;' that was just the way she said it.

"*Q.* Whether or not she said she wished the case could be dropped out of court then and there?

"*A.* Yes, sir."

In the course of the charge the court said:

"Was that motive or intent the accomplishment of his purpose in having intercourse with this girl, and, the fact that the girl has testified that she didn't want —or would have wished that the case might not have been brought, should not be considered or taken into account, because you can all readily understand what an unpleasant notoriety the publicity of this thing gives to a young girl in a community, and she undoubtedly shrank from that publicity and coming to court on a case of this kind; her natural feelings would be that, not having been injured so as to permanently disable her, she would rather drop it than to have the matter prosecuted."

I find no reference in the charge to the testimony above quoted. In view of the fact that the case must be again tried, further reference to the charge is omitted, except to say that in the main correct rules were given for the guidance of the jury.

The exceptions, as herein indicated, are sustained, and a *venire de novo* is awarded.

MCALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.