## Case No. 15,824.

UNITED STATES v. MOSES.

[1 Cranch, C. C. 170.] [1]

Circuit Court, District of Columbia. June Term, 1804.

WITNESS—INCRIMINATING TESTIMONY.

A witness is not bound to answer a question. the answer to which may tend to criminate himself.

## Case No. 15,825.

UNITED STATES v. MOSES.

[4 Wash. C. C. 726.] [2]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1827.

COUNTERFEITING—INTENT—WITNESS—PRIVILEGED COMMUNICATIONS.

1. In a criminal prosecution, the officer who apprehended the prisoner being examined as a witness for the United States. is not bound to disclose the name of the person from whom he received the confidential information which led to the prisoner's detection.

[Cited in Re Quarles, 158 U. S. 536, 15 Sup. Ct. 961.]

[Cited in State v. Soper, 16 Me. 295; Worthington v. Scribner, 109 Mass. 491; People v. Laird, 102 Mich. 135, 60 N. W. 457.]

2. The same witness being asked, if A B had told him if he would come to a particular house, (being that where the forgery, the offence charged, was carrying on.) on a certain day, he would have the prisoner there? The court required him to answer the question.

3. In a prosecution for forging the notes of the bank of the United States. it is necessary to prove that it was committed with intent to defraud some corporation or person, and that the notes stated in the indictment and given in evidence as forged, and those alleged to be forged, are the same.

[Cited in U. S. v. Shellmire. Case No. 16,-271.]

The prisoner [Reuben Moses] was tried upon five indictments, three of which were for counterfeiting the notes of the bank of the United States, of different denominations, and the other two for having in his possession bank notes of different denominations, engraved and printed after the similitude of notes issued by the said bank, with intent to use them in forging the notes of the said bank.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

Upon the trial of these indictments, the following points of evidence were ruled by the court: That the officer who apprehended the prisoner is not bound to disclose the name of the person from whom he received the information, which led to the detection and apprehension of the prisoner. Such a disclosure can be of no importance to the defence in this case, and may be highly prejudicial to the public in the administration of justice, by deterring persons from making similar disclosures of crimes which they know to have been committed. 1 Starkie, Ev. 106; Burr's Case [Cases Nos. 14692–14694a] in the circuit court of Virginia; 2 Starkie, Ev. 400. The witness was then asked. whether Bernard Johnson, the person, in whose house the defendant was apprehended whilst sitting on a table on which the counterfeit bank notes mentioned in those indictments were lying. had told him, that if he would come to his house on a certain day, being the day on which the prisoner was apprehended, he would have the prisoner Craig there. This was objected to by the district attorney, but the objection was overruled. The evidence may be all important to the defence, by showing or laying a ground for presuming that he was innocently at the place where the officer found him. in consequence of an insidious invitation given to him by Johnson. This is a very different question from the former.

Mr. Ingersoll, U. S. Dist. Atty.

Randall & Philips, for defendant.

WASHINGTON, Circuit Justice (charging jury). The crimes charged against the prisoner in the indictments, on which the jury have to decide, are: (1) The counterfeiting of certain bank notes of various denominations, purporting to be notes of the bank of the United States. (2) Having in his possession certain blank notes, engraved and printed after the similitude of the notes issued by that corporation, with intent to use them in counterfeiting notes issued by that corporation.

That the prisoner did counterfeit the notes under the first head, with intent to defraud the bank of the United States, or some other corporation or person, and that the notes set forth in the indictment and given in evidence, and those alleged to be counterfeit, are the same; ought to be proved to the satisfaction of the jury, to warrant them in convicting the defendant. As to the identity of the notes, the evidence is as follows: The officer who found the counterfeit notes as well as the blank ones on a table at which the defendant was sitting, swears that he bundled them up in different parcels, and delivered them to the mayor; who, upon his examination, has stated that he delivered the same notes to the district attorney; who, with his assistant in drawing these indictments, retained the possession of

them until they were delivered by the district attorney. to the foreman of the grand jury, who has returned them with the bills to the clerk of the court. To prove that the notes alleged to be counterfeit are so, one of the tellers of the bank has been examined, and testifies that the signatures of the president and cashier, as well as the filling up of the blanks, are all false and counterfeit. No evidence has been offered to contradict, or to discredit this witness.

The only remaining inquiry is, were the notes charged to be counterfeited, counterfeited by the prisoner with intent to defraud the bank of the United States or any person? It is not necessary to the conviction of the accused that these facts should be established by positive proof. Circumstantial evidence is sufficient, if it be such as to satisfy the minds of the jury of the existence of the facts which it is intended to prove. These circumstances as stated by the witnesses in the present case, are the following: McClean, one of the high constables of the city, having received information that on a certain day he would find the prisoner and Craig at the house of B. Johnson, and employed in the business of counterfeiting; approached the house on that day, having with him two other constables, and finding the outer door unfastened, they entered and rushed up stairs; where, in a room in the third story, they found Johnson standing at a table, and the defendant seated at it, both of them with their coats off. On the table was a large number of counterfeit notes of the bank of the United States, and of blank notes in the similitude of the notes of that bank. The prisoner appeared to be greatly alarmed, and being asked by McClean what he was about, muttered something which the witness did not understand. On the table were three phials of ink and a couple of pens then wet with ink. On the first alarm the defendant suddenly rose from his seat and seized with one of his hands a bundle of notes which were on the table. He gave no explanation whatever when spoken to by McClean, tending to account for the situation in which he was found, or in any other way to exculpate himself. Among the articles found on the table were papers filled with the names of Nicholas Biddle and Thomas Wilson, the president and cashier of the bank; and on one of these papers was found the name of the prisoner three times written. Johnson, the prisoner, and Craig, who had been arrested on the stairs, were then taken to the mayor's office, when, upon an examination of the notes, four or five of them, amounting to $140, were found to be genuine, and were claimed by the prisoner as his property. A few days afterwards, some parts of a press were found in a cellar closet, at the house of the prisoner, which exactly fitted a press about the same time discovered in a privy of a house occupied by his brother. These are the material

circumstances which have been given in evidence, and it is for this jury to say whether they are sufficient to establish the guilt of the prisoner, as charged in any or all of the indictments.

The jury found the prisoner guilty on all the indictments.