RICHARD WORTHINGTON *vs.* CHARLES SCRIBNER & others.

In an action for maliciously and falsely representing to the treasury department of the United States that the plaintiff was intending to defraud the revenue, the defendants cannot be compelled to answer interrogatories, filed by the plaintiff, inquiring whether they did not give or cause to be given to the department information of supposed or alleged frauds on the revenue contemplated by the plaintiff.

TORT against Charles Scribner, Andrew C. Armstrong, Edward Seymour, Arthur J. Peabody, and Charles Welford.

The declaration alleged that the plaintiff was engaged in importing books into the United States; that the defendants, conspiring to injure him and prevent his so importing books, and without probable cause, maliciously and falsely represented to the treasury department of the United States, and to the solicitor of the United States treasury, that the plaintiff had purchased books with the intention of bringing them into the United States, either altogether in fraud of the United States revenue, or at a fraudulent undervaluation, and thus induced the department and the solicitor to order the plaintiff's books to be seized, when entered for import, that sundry cases of his books were accordingly seized and libelled on informations in the United States courts; and that the informations were afterwards dismissed and the books released. The defendants' answer denied all the plaintiff's alle-

gations, and further alleged "that if any communication was made by any person to said solicitor or other officer of the United States, as alleged, or relative to any anticipated attempts to introduce goods into the United States without payment of the proper duties thereon, and not in conformity with the laws of the United States, the same would be a privileged communication, and would not be ground or cause for this action."

The plaintiff filed interrogatories, to be answered by the defendants severally, one of which was as follows : " Did you not, in the summer or fall of 1869, and if so, when, inform the United States treasury department, the secretary, the solicitor of the treasury, or some officer or employé in said department, and if yea, when, that you knew, or believed, or thought that the plaintiff was buying large quantities of books in England, with the intention of bringing them into the United States in violation of law, or anything to that effect ? If yea, state fully all that you did in the matter, including copies of all written communications, and substance of all oral statements." There were other interrogatories similar to this, and designed substantially to ascertain whether the defendants had not informed the treasury department, or some officer thereof, of alleged contemplated frauds on the revenue, or as to the channels through which such information came to the United States government.

The defendants refusing to answer these interrogatories, the plaintiff moved that they be ordered to do so, and the question whether the motion should be granted was reserved by Wells, J., for the determination of the full court.

R. M. Morse, Jr., & R. Stone, Jr., for the plaintiff.

G. S. Hale, for the defendants.

GRAY, J. It is the duty of every citizen to communicate to his government any information which he has of the commission of an offence against its laws. To encourage him in performing this duty without fear of consequences, the law holds such information to be among the secrets of state, and leaves the question how far and under what circumstances the names of the informers and the channel of communication shall be suffered to be known, to the absolute discretion of the government, to be exer-

cised according to its views of what the interests of the public require. Courts of justice therefore will not compel or allow the discovery of such information, either by the subordinate officer to whom it is given, by the informer himself, or by any other person, without the permission of the government. The evidence is excluded, not for the protection of the witness or of the party in the particular case, but upon general grounds of public policy, because of the confidential nature of such communications.

The earliest case upon the subject is *Rex* v. *Akers*, 6 Esp. 125 note, in which, on an indictment for obstructing a custom-house officer in the execution of his duty, Lord Kenyon said : " The defendant's counsel have no right, nor shall they be permitted, to inquire the name of the person who gave the information of the smuggled goods." All the English authorities agree that the rule has ever since been held in revenue cases to prevent a witness from answering questions that would disclose the informer, if a third person ; and in *Attorney General* v. *Briant*, 15 M. & W. 169, it was held that a witness could not be asked on cross-examination whether he was himself the informer. The rule has been nearly as long established in prosecutions for high treason. *Rex* v. *Hardy*, 24 Howell's State Trials, 199, 753, 816–820, 823. *Rex* v. *Watson*, 32 Howell's State Trials, 1, 102–105 ; *S. C.* 2 Stark. 116, 136. And it has been often applied in civil actions.

In *Robinson* v. *May*, 2 Smith, 3, which was an action for a libel in a letter by the defendant to the lords of the admiralty, charging the plaintiff with unlawfully pretending to be a magistrate and granting protections to vessels to the prejudice of the royal service, the lords of the admiralty had given up the letter and directed the action to be brought, so that no question whether it could otherwise have been put in evidence arose ; the only question argued was whether the letter could be held to be a libel ; and Lord Ellenborough, in delivering judgment against the defendant on that question, expressed a significant doubt " whether the board of admiralty did right in suffering the paper to go out of their hands, since it might tend to discourage the giving of information concerning abuses " — thus distinctly implying that, but for the course taken by the board of admiralty, the plaintiff could not have proved his case.

In *Home* v. *Bentinck*, 2 Brod. & Bing. 130, it was held by Chief Justice Abbott, and affirmed in the exchequer chamber, in an action for libel by an officer of the army against the president of a military court of inquiry, that neither their report to the commander in chief, nor an office copy of it, should be admitted in evidence. In the very recent case of *Dawkins* v. *Rokeby*, Law Rep. 8 Q. B. 255, the same court held the statements, oral or written, of an officer, examined before such a military tribunal, to come within the same principle. And in *Beatson* v. *Skene*, 5 H. & N. 838, an action of slander against one military officer for speaking defamatory words of the military conduct of another, it was held that the secretary for war, who objected to produce in evidence the minutes of a court of inquiry, and letters written to the war department by the plaintiff himself, on the ground that their production would be prejudicial to the public service, was not bound to produce either.

In *Earl* v. *Vass*, 1 Shaw, 229, which was an action for a libel alleged to be contained in a letter to the board of customs before which the nomination of the plaintiff as a custom-house officer was pending, the house of lords, upon the opinion of Lord Eldon after conference with Chief Justice Abbott, held that the board could not be compelled to produce the letter, " because it is against public policy that you should be compelled to produce instruments and papers, which, if persons are compelled to produce, it must shut out the possibility of the public receiving any information as to a person's fitness to be appointed to an office ; " and " it would be a very dangerous thing indeed, if this were permitted."

In *Marbury* v. *Madison*, 1 Cranch, 137, 144, the supreme court of the United States compelled the acting secretary of state to testify whether certain commissions from the executive had ever been in his office, only because " that could not be a confidential fact ; " and declared, that if there was anything confidential, or the secretary thought anything was communicated to him in confidence, he was not obliged to disclose it.

The ruling of Chief Justice Marshall upon the trial of Aaron Burr, cited for the plaintiff, was merely that a *subpœna duces tecum* might be issued to the President of the United States for

a letter addressed to him by a military officer who was to be a witness against the defendant; leaving the question of the production of the letter, if containing any matter which in the judgment of the President could not be disclosed without injury to the public, to be considered on the return of the subpœna. 1 Burr's Trial, 177–189. And he never had occasion to decide that question. See 2 Burr's Trial, 533–539.

In *United States* v. *Moses*, 4 Wash. C. C. 726, upon the trial of an indictment for counterfeiting, it was ruled that the officer who apprehended the defendant was not bound to disclose the name of the person from whom he received the information which led to the detection and arrest; Mr. Justice Washington saying that such disclosure might be highly prejudicial to the public in the administration of justice by deterring persons from making similar disclosures of crimes which they knew to have been committed.

In *State* v. *Soper*, 16 Maine, 293, a like ruling was made upon the cross-examination of the owner of stolen goods, when called as a witness for the government upon the trial of an indictment for larceny.

In Pennsylvania, it has been determined in an action for a libel contained in a deposition made and sent to the governor by a private citizen, charging the plaintiff with misconduct in office, that it was within the discretion of the governor to produce or withhold the letter, and that parol evidence of its contents was inadmissible. *Gray* v. *Pentland*, 2 S. & R. 23. *Yoter* v. *Sanno*, 6 Watts, 164, 166.

In *White* v. *Nicholls*, 3 How. 266, and *Howard* v. *Thompson*, 21 Wend. 319, cited for the plaintiff, the original letters to the President and the secretary of the treasury, which were relied on as containing libellous matter, were produced by the plaintiff, who must have obtained them by permission of the government, so that no question of compelling a disclosure arose; and in *Howard* v. *Thompson* the court said that if the letters had not been surrendered by the secretary of the treasury, he could not have been compelled to produce them, and secondary evidence of their contents could not have been admitted.

The only cases which afford any color for the plaintiff's position are of rulings at *nisi prius*, of very little weight, as compared with so many well considered judgments rendered upon full argument.

In one case before Lord Kenyon and another before Baron Rolfe, a witness who appeared on his direct examination by the government to be an informer was permitted, without objection, to testify on cross-examination that no other person gave information upon the subject; but in such a case, Baron Rolfe remarked, " The principle was rather followed than violated." *The King* v. *Blackman*, 1 Esp. 95. *Regina* v. *Candy*, cited 15 M. & W. 175.

The ruling of Chief Justice Cockburn, upon an indictment for administering poison, in *Regina* v. *Richardson*, 3 F. & F. 693, compelling a policeman to answer on cross-examination from whom he had received the information in consequence of which he found the poison in a place used by the defendant, must be maintained, if at all, upon the ground that the witness had already been examined by the government as to part of the conversation between him and the informer, and might therefore, for the protection of the defendant against any unjust inference which might be drawn from the result of such examination, be required to state the whole of that conversation.

The ruling of Lord Campbell in *Dickson* v. *Wilton*, 1 F. & F. 419, that a communication sued on as a libel, held by the secretary for war in behalf of the crown, should be produced from his office and read in evidence, was, as observed by Chief Baron Kelly in delivering the judgment of the exchequer chamber in *Dawkins* v. *Rokeby*, Law Rep. 8 Q. B. 255, 273, directly at variance with the previous judgment of that court in *Home* v. *Bentinck*, 2 Brod. & Bing. 130, above cited.

In *Blake* v. *Pilfold*, 1 Mood. & Rob. 198, in which Mr. Justice Taunton admitted in evidence, to support an action for libel, a letter to the chief secretary of the postmaster general from a private individual, complaining of the misconduct of a guard, the objection was made by the defendant's counsel, " on the ground that it was a privileged communication made to a public officer, and that such public officer ought not to be allowed to produce

it ; " the post-office department had evidently suffered the letter to pass into the plaintiff's hands, for the report states that the handwriting was proved before the objection was made ; and the whole attention of the judge seems to have been directed to the question whether the letter could be deemed a privileged communication upon which no action would lie. This last question was the only one touched by the other authorities cited for the plaintiff. *Fairman* v. *Ives*, 5 B. & Ald. 642. *Dawkins* v. *Paulet*, Law Rep. 5 Q. B. 94. *O'Donohue* v. *McGovern*, 23 Wend. 26. 2 Kent Com. (6th ed.) 22.

The question now before us is not one of the law of slander or libel, but of the law of evidence ; not whether the communica tions of the defendants to the officers of the treasury are so privi leged from being considered as slanderous, as to affect the right to maintain an action against the defendants upon or by reason of them ; but whether they are privileged in a different sense, so that courts of justice will not compel or permit their disclosure without the assent of the government to whose officers they were addressed. The reasons and authorities already stated conclusively show that the communications in question are privileged in the latter sense, and cannot be disclosed without the permission of the secretary of the treasury. And it is quite clear that the discovery of documents which are protected from disclosure upon grounds of public policy cannot be compelled, either by bill in equity or by interrogatories at law. *Smith* v. *East India Co.* 1 Phil. Ch. 50. *McElveney* v. *Connellan*, 17 Irish C. L. 55. *Wil- son* v. *Webber*, 2 Gray, 538. The defendants therefore should

*Not be ordered to answer the interrogatories.*