102  135
105   85
102  135
107  429

THE PEOPLE v. GEORGE L. LAIRD.

*Criminal law — Privileged communications — Evidence of good character — Instructions.*

1. Where, in a prosecution for burglary, the defense is an alibi, and the officers who made the arrest explain their presence in the building by testifying that they expected it to be entered, it is not error to reject testimony, sought to be drawn out on their cross-examination, relative to the source from which they derived their information that a burglary was premeditated.

2. A case might arise where a person claiming to have been innocently at the place where the crime was committed, at the solicitation of a person suspected of being the informant, would 'be entitled to inquire whether such person was the informant.

3. Where, in a prosecution for burglary, the sole disputed question of fact is as to the presence of the respondent at the scene of the burglary, and there is positive evidence on both sides of the question, it is error to instruct the jury that, if they find that there is positive evidence that the respondent did commit the offense, they are to pay no attention to the evidence which he has introduced tending to show his previous good character, such evidence being entitled to consideration in determining the disputed question.[1]

---

[1]GOOD CHARACTER AS A DEFENSE IN CRIMINAL CASES.

For cases bearing upon the question of proof of good character in criminal cases, and the effect that should be given to it by the jury, see:

*General Rules Applicable to the Subject.*

1. *People v. Garbutt*, 17 Mich. 9, 26, holding that good character is an important fact ,with every man, and never more so than when put on trial charged with an offense which is rendered improbable in •the last degree by a uniform course of life wholly inconsistent with any such crime; that there are cases where it becomes a man's sole dependence, and yet may prove •sufficient to outweigh evidence of the most positive character; that the most clear and convincing cases are sometimes satisfactorily rebutted by it, and a life of unblemished integrity becomes a complete shield of protection against the most skillful web of suspicion and

Error to recorder's court of Detroit.    (Chambers, J.)
Argued June 28, 1894.    Decided September 25, 1894.

Respondent was convicted of the crime of burglary, and
sentenced to imprisonment in the State prison for seven
years.    Judgment reversed.    The facts are stated in the
opinion.

*George Cox,* for respondent.

*A. A. Ellis,* Attorney General, and *Allan H. Frazer,*
Prosecuting Attorney, for the people.

McGRATH, C. J.    Respondent was convicted of burg-
lary.    The police department, on the evening of December
15, 1893, received information that a burglary would
probably be committed some time during the night, or
early the following morning, at the residence of one Tan-

---

falsehood which conspirators have been able to weave; that good
character may not only raise a doubt of guilt which would not
otherwise exist, but it may bring conviction of innocence; that in
every criminal trial it is a fact which the respondent is at liberty
to put in evidence, and, being in, the jury have a right to give it
such weight as they think it entitled to.

2. *People v. Mead,* 50 Mich. 228, 233, holding that a person on
trial for crime is entitled in all cases to the benefit of testimony
as to his good character; but, if the evidence of his guilt is con-
vincing beyond a reasonable doubt, he should be convicted, not-
withstanding his good reputation.

3. *People v. Evans,* 72 Mich. 367, holding that the failure of a
respondent to offer affirmative evidence of his good character
raises no legal inference that he is guilty of the offense charged,
or that his character is bad, and it is the gravest error for the
court to permit the prosecuting attorney to comment upon the
absence of such testimony, which error is not cured by an instruc-
tion to the jury not to consider the argument.

4. *People v. Marks,* 90 Mich. 555, holding that where a respond-
ent introduces evidence of his good character, which is not
attempted to be rebutted by the prosecution, it is prejudicial error
for the court to instruct the jury that, while the law permits him
to make such proof, the people are prohibited from showing his
bad character.

nenholtz. Acting on this information, six officers were sent by Capt. Bachman to Tannenholtz's place, with instructions, if a burglary was committed, to arrest the parties. The officers informed .Tannenholtz, procured from him a key, and secreted themselves upon the premises. At a few minutes after 5 in the morning, the rear door was broken open, and the place entered. Just after the place was entered, several shots were exchanged, and the burglars ran. Respondent was recognized by one of the officers at the door, and by two other officers in the course of the chase which followed. The defense was an alibi. The officers, in explaining their presence in the saloon,[1] testified that they expected the place to be entered. On cross-examination, each officer was asked a number of questions

---

[1] The first story of the building was occupied as a saloon, and the second as a dwelling.

---

5. *People v. Mills*, 94 Mich. 630, holding that, where a respondent's general character is put in issue by the defense, comment upon that character is clearly proper.

6. *People v. Jassino*, 100 Mich. 536, holding that evidence of good character is admissible not only in a case where doubt otherwise exists, but may be offered for the purpose of creating a doubt.

### Illustrative Cases.

1. *People v. Garbutt*, 17 Mich. 9, 26, where, in a prosecution for murder, evidence was adduced by the respondent to establish his uniform good character previous to the time of the alleged offense, and the court was requested to instruct the jury that they had a right to consider whether such evidence tended to rebut the presumption of malice. And it was held that the proposed instruction was correct in substance, and that the respondent was entitled to it without explanation or qualification; that the evidence could have no bearing whatever except upon the question of malicious intent; that to refuse the instruction, therefore, was equivalent to holding, or at least to leaving the jury to infer, that the evidence, which was lawfully put into the case, was immaterial after it was in.

2. *Campbell v. People*, 34 Mich. 351, where, in a prosecution for rape, the court instructed the jury that the respondent had offered evidence tending to show his good character; that it was not

relative to the source from which they derived their informa-
tion that a burglary was premeditated, but the testimony
was rejected.

The general rule is that persons engaged in the detection
of crime are not bound to disclose the sources of the
information which led to the apprehension of the prisoner.
The reason for the rule is that such disclosure can be of
no importance to the defense, and may be highly preju-
dicial to the public in the administration of justice by
deterring persons from making similar disclosures. 1 Greenl.
Ev. § 250; Best, Ev. (Chamberlayne's 1st ed.) § 578, note
1*a; Rex v. Akers*, 6 Esp. 125; *Hardy's Trial*, 24 Howell,
St. Tr. 808; *U. S. v. Moses*, 4 Wash. C. C. 726; *Attorney
General v. Briant*, 15 Mees. & W. 169; *State v. Soper*, 16
Me. 293; *Gray v. Pentland*, 2 Serg. & R. 23, 32; *Worth-
ington v. Scribner*, 109 Mass. 487. In the last case cited,
Gray, J., says:

usual, perhaps, for good men to commit crime, but it was possible,
and men who have stood high have been convicted; that the jury
should consider the evidence with the rest, and give the prisoner
all the benefit of it that they believed him entitled to. And it
was held that the instruction was calculated to insure to the
respondent the full benefit of his good reputation.

3. *Brownell v. People*, 38 Mich. 732, 736, holding, in a prosecution
for murder, that it was entirely inadmissible, in answer to proof of
the general good reputation of the respondent, to receive evidence
of an alleged act of violence against another person than the
deceased, at a former time and different place; that the respondent
could not (be expected to) be prepared to meet any such testimony
or explain it, and its introduction might seriously prejudice the
jury.

4. *People v. Harrison*, 93 Mich. 594, where, in a prosecution for
larceny, the circuit judge instructed the jury that a good char-
acter was of importance to a person charged with crime, and that
the jury had the right to consider whether a person with a good
character would be less liable to be guilty of crime than one of
bad habits and character. And it was held that this is undoubtedly
the true rule, and it is so beneficial in its character that it is
entitled to the constant recognition of all courts when engaged in
the trial of any person charged with the commission of a crime.

" It is the duty of every citizen to communicate to his government any information which he has of the commission of an offense against its laws. To encourage him in performing this duty, without fear of consequences, the law holds such information to be among the secrets of state, and leaves the question how far and under what circumstances the names of the informers and the channel of communication shall be suffered to be known to the absolute discretion of the government, to be exercised according to its views of what the interests of the public require. Courts of justice, therefore, will not compel or allow the discovery of such information, either by the subordinate officer to whom it is given, by the informer himself, or by any other person, without the permission of the government. The evidence is excluded, not for the protection of the witness or of the party in the particular case, but upon general grounds of public policy, because of the confidential nature of such communications."

And our own Court, in *People v. Davis,* 52 Mich. 569, 573, recognize the rule. Chief Justice Cooley in that case says:

" And we are not called upon in this case to consider

---

5. *People v. Pyckett,* 99 Mich. 613, where, in a prosecution for arson, testimony was introduced as to the general good character of the respondent, the question put to the witnesses being, " Do you know what his reputation for good moral conduct is?" On cross-examination the witnesses were interrogated as to specific acts of the respondent which occurred prior to the fire. And it was held that such interrogation was proper.

6. *People v. Jassino,* 100 Mich. 536, where, in a prosecution for an assault with intent to do great bodily harm less than the crime of murder, the court instructed the jury that a man's good character is a valuable thing under all circumstances; that it is proper evidence to be considered by the jury in doubtful cases to determine whether or not a man having that good character would commit the offense charged; that it often avails, and should avail, to acquit a man under such circumstances; but that, when there is positive proof of the commission of an offense, good character cannot avail to overthrow the proof. And it was held that the instruction was erroneous, in that it deprived the respondent of the benefit of proof of good character if the jury should find positive evidence tending to show the commission of the offense.

whether there may not be cases in which the prosecuting attorney would be excused, in the interest of the State, from disclosing what had been told to him with a view to the commencement of criminal proceedings. There would be strong reasons in many cases why the counsel of the State should be inviolably kept; and nothing we shall say in this case will be intended to lay down a rule except for the very case at bar and others standing upon the same facts."

The rule is broad enough to protect the information as well as the informant, at least so far as it is necessary to shield the informant. In the present case the question involved was the presence and identity of the respondent at the scene of the burglary, and the court permitted a disclosure of the information so far as it related to him. A case might arise where a person claiming to have been innocently at the place of the crime, at the solicitation of a person suspected of being the informant, would be entitled to inquire whether such person was the informant. *U. S. v. Moses, supra.* But no such case is here. The defense here was that respondent was not present.

Much is said in the respondent's brief about the methods of the police department. The police are dealing with dangerous characters. Burglary is a profession. Men known to be connected with the profession infest communities. They are desperate characters, and take life to facilitate escape. The duty of the police lies beyond the protection of the public from a particular offense. It will not do to lay down the rule that, if a burglary is suspected, it is the duty of police officers to prevent the commission of that particular offense, rather than lie in wait and secure the guilty parties. In such case the police do not encourage the commission of the crime, but simply apprehend parties bent upon the crime, who, in carrying out plans already formulated, rush into the arms of the officers. Even an informant accompanying his associates

does not necessarily encourage their purpose, and it is not proper that he should, but he simply acquiesces in a plan already formed. We find no error in the record in respect to these matters.

The conviction must, however, be set aside for other reasons. Several witnesses were called as to the previous good character of the respondent, and the people called no witnesses upon that subject. The court instructed the jury that—

"Good character is always admissible, gentlemen, in criminal cases, and may be always received by you, *but it is for you to say whether it will have any weight with you in coming to your verdict, or not.* The testimony of the defense may be introduced to show what the character of the defendant is; and if the testimony is incompatible with your judgment in regard to defendant's good character, if you think it is insufficient, *or if you think defendant is guilty without any testimony with reference to character,* it would be your duty to say so. The defendant might have a good character up to a certain time, and afterwards he might have committed a crime.

"If a crime was absolutely committed, and you are satisfied beyond a reasonable doubt, *then good character would be comparatively useless,* so far as you are concerned, because men sometimes have to have some commencement in crime, and a man might have a good reputation and good character most all of his life, and he may commit some crime; and it does not follow, because he has always had a good reputation, that, therefore, he is a good man. It is a question for you to say whether, *if there is any doubt in regard to the case,*—whether you believe that testimony, or *whether you will accept testimony to show that his character is good, when you have positive evidence that his character is not good,* and that is a question for you to say entirely.

"In regard to the man's reputation, you have heard the testimony introduced here of some of the witnesses that defendant had borne a good character up to the time of this offense; and it is a question for you to consider whether a man who has lived a good life and enjoyed a high reputation for 35 or 40 years,—whether he would be likely to commit the offense charged. If you believe he would, then, of course, character would be of no impor-

tance.   If you believe that he did commit the offense, *and*
*you find that there is positive evidence that he did commit*
*it, of course you would pay no attention to the man's repu-*
*tation."*

This instruction was erroneous, in that it authorized the
jury to disassociate the testimony as to good character
from the other testimony in the case.   The sole question
was as to respondent's presence at the scene of the burg-
lary.   The evidence upon that question was conflicting.
There was positive evidence that respondent was present,
but there was also testimony, equally as positive, that he
was not.   The testimony as to good character supplemented
the latter class of testimony, and was entitled to considera-
tion in determining the disputed question.   The court
might as well have said:

"If you find positive evidence that respondent was
present, then you may reject the testimony which tends
to show that he was not."

The precise question was before this Court in *People v.*
*Jassino,* 100 Mich. 536.

The judgment is reversed, and a new trial granted.

LONG and HOOKER, JJ., concurred.   GRANT and MONT-
GOMERY, JJ., did not sit.