FRANK CENTOAMORE V. STATE OF NEBRASKA.

FILED DECEMBER 23, 1920. No. 21473.

1. **Witnesses: PRIVILEGED COMMUNICATIONS: COMMUNICATION TO PROSECUTOR.** Though communications to a prosecuting officer by a complaining witness are privileged, the rule is subject to certain limited exceptions, when invoked in a criminal proceeding based upon the facts so communicated.

2. ——: ——: ——. In a case of statutory rape, *held* that the accused was entitled to show that the prosecuting witness made statements to the county attorney, denying that the accused had

committed the act charged. The testimony of the county attorney showing such statements cannot be excluded on the ground that the communication was privileged.

ERROR to the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Reversed.*

*C. W. Britt,* for plaintiff in error.

*Clarence A. Davis, Attorney General,* and *J. B. Barnes,* contra.

FLANSBURG, J.

Defendant was convicted of statutory rape.

Error is predicated upon a ruling of the court excluding evidence offered by defendant of statements made by the prosecuting witness to the deputy county attorney to the effect that the defendant had not committed an assault upon her.

Testimony had been introduced showing that the prosecuting witness was an Italian girl, 14 years of age, that her father had betrothed her to defendant, and that the offense complained of was committed about the last week of August, 1919. The exact date of the offense charged was never definitely fixed. The information filed in the case gave the time as September 25. Testimony was introduced of a physical examination made on September 13, and this examination, the doctor testified, indicated that intercourse had taken place within the previous 24 or 48 hours.

About this time the father of the prosecuting witness was arrested, on the complaint of the defendant here, upon a charge of incest committed upon his daughter. At that time both the father and the defendant were held by the county attorney. The prosecuting witness consulted with the deputy county attorney, and following the interview the father was held on the charge, and this defendant allowed to go. On September 25 the father was kicked by a horse and died, and afterwards this prosecution was commenced against the defendant here.

During the trial of this case the defendant offered to show by the testimony of the deputy county attorney that the prosecuting witness, at the interview just above mentioned, informed that official that the father was guilty, and that the defendant had not committed an assault upon her. This testimony was material as bearing upon the credibility of the complaining witness and as bearing directly upon the question of the guilt of the accused. The objection to the offer was sustained upon the ground that the statements, having been made by the complaining witness to the deputy county attorney, were privileged communications.

It is the general rule, especially applicable in proceedings collateral to the pending criminal action, that such communications, made to the prosecuting officer, are privileged. 40 Cyc. 2369. Though the relation of attorney and client can hardly be said to exist between the prosecuting witness and the officer, since such officer is acting as the attorney for the state, and the witness is not, literally speaking, his client, the rule is based, rather, upon the broad ground of public policy and is established as a means of fostering and promoting a free and unimpeded administration of the criminal law. It is a matter of public concern that every citizen should be allowed, and that it be his duty, to freely communicate to such officers any and all information which he may have of violations of criminal law, and, as an encouragement to the unembarrassed exercise of that duty, as well as for the protection of the informant, the law throws about the information given an enforced secrecy.

The rule has been rigidly enforced in cases such as malicious prosecution and slander, brought against the informant, and based on alleged false statements made to the prosecuting officer. *Vogel v. Gruaz,* 110 U. S. 311; *Oliver v. Pate,* 43 Ind. 132; *Gabriel v. McMullin,* 127 Ia. 426; *Michael v. Matson,* 81 Kan. 360; *Worthington v. Scribner,* 109 Mass. 487.

Though communications are generally protected as privileged even in the criminal proceeding, based directly upon the information given by the informant, still it would seem to us that in such cases it should not, in every instance, be followed absolutely and without qualification.

Somewhat analogous is the relaxation of the rule relating to the privilege accorded the members of the grand jury.  As stated in Jones, Evidence (2d ed.) sec. 765: "At common law and in most of the states the oath administered to grand jurors binds them to preserve inviolate the secrets of the jury-room; and on this ground, as well as on other grounds of public policy, it was the common-law rule, quite strictly enforced, that the *proceedings of grand jurors* were *privileged,* and could not be made public.  Accordingly, it was formerly held that grand jurors could not be asked to state the testimony of a witness given before them, for the purpose of impeaching him at the trial.  But it is now generally held in this country that a grand juror may be called to show that the *statements of a witness* on the trial are in contradiction to those made by him before the grand jury."

Criminal proceedings are instituted with the object, not alone of securing convictions, but of getting as near to the truth as possible on the question of the guilt or innocence of the accused.  A case of the kind under consideration depends very largely, if not almost entirely, upon the testimony of the prosecuting witness.  The weight to be given her testimony is the paramount issue.  If she has made statements denying the guilt of the accused, even though the statements have been made to the prosecuting attorney, it would seem to be in the interests of justice that these statements should be made known to the jury.

The determination of the question of guilt or innocence of the accused is of so great importance that the accused should not be denied the right to produce such material testimony, available and within his reach, merely from the fact that there are reasons of public policy why the communication, which has become the very basis of the

charge made against him, should not be disclosed. The importance of the question of guilt or innocence, on the one hand, must in such an instance outweigh the question of policy, on the other. This testimony was not offered against the prosecuting witness, it was not offered in a case where she was in need of the protection that the law might then have afforded her, and we cannot say that there are reasons of public policy still existing which are so great as to override the right of the accused to a fair and impartial trial. The right to show those statements and to develop that testimony was in this case, it seems to us, essential to such a trial.

Though a privilege may be claimed generally as to communications made to the county attorney by the complaining witness, we believe that the rule should be subjected to the exception that the accused may be allowed to inquire specifically as to whether the prosecuting witness did not make certain statements in denial of the guilt of the accused, and, if so made, to develop what those statements were. *Riggins v. State,* 125 Md. 165; *People v. Davis,* 52 Mich. 569; *King v. United States,* 112 Fed. 988.

For the reasons given, the judgment of the district court is reversed and a new trial ordered.

REVERSED AND REMANDED.