**SEGUROLA et al. v. UNITED STATES.**

(Circuit Court of Appeals, First Circuit. December 18, 1926.)

No. 1922.

1. **Criminal law ⊸1186(4)—Refusal to furnish defendants with copy of information at government expense held not ground for reversal (Judicial Code, § 269, as amended [Comp. St. § 1246]).**

Refusal of the court to order copy of information to be furnished at government expense to defendants, charged with misdemeanor, *held* not to affect their substantial rights, so as to warrant reversal of a judgment of conviction, under Judicial Code, § 269, as amended (Comp. St. § 1246), where they were expressly given leave to examine and copy the information.

2. **Witnesses ⊸216—Police officer, who arrested defendant and seized liquor not required to state source of confidential information on which he. acted.**

A police officer may not be required to give the source of confidential information on which he acted in arresting defendant and searching for and seizing liquor which defendant was illegally transporting.

3. **Criminal law ⊸1054(1)—Objection to testimony presents nothing for review, unless exception is saved.**

Exception must be taken to overruling of objection to testimony, to present any question to appellate court.

4. **Criminal law ⊸554—Jury is not required to accept uncontradicted testimony of defendant.**

Where a defendant voluntarily testifies, it is for the jury to say whether, in the light of his appearance and all the circumstances, his testimony, which would acquit him of guilt, though uncontradicted, is true or false.

5. **Intoxicating liquors ⊸173—Separate sentences for possessing and transporting same liquor in single transaction held unauthorized.**

A defendant may not be subjected to separate sentences for possessing and transporting the same liquor as a single transaction.

Bingham, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Porto Rico; Ira K. Wells, Judge.

Criminal prosecution by the United States against Augustin Segurola and another. Judgment of conviction, and defendants bring error. Reversed as to first count, and affirmed as to second count.

E. B. Wilcox and Salvador Mestre, both of San Juan, Porto Rico, on the brief, for plaintiffs in error.

· George R. Farnum, Asst. U. S. Atty., of Boston, Mass. (John L. Gay, U. S. Dist. Atty., and Jesus A. Gonzalez, Asst. U. S. Atty., both of San Juan, Porto Rico, on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. On an information in two counts—the first for possession, and the second for transporting liquor contrary to the National Prohibition Act (Comp. St. § 10138¼ et seq.)—both defendants, Segurola and Santiago, were found guilty. Santiago was fined $100 under the first count, $200 under the second count, and one-half the costs of the proceedings. Segurola was fined $200 under the first count,

$300 under the second, and the other half of the costs.

The record shows facts as follows:

Ceballos was, on May 26, 1923, an officer in the insular police force. On that day, as the result of confidential information by telephone to the effect that Segurola, in a Buick automobile, was coming from Luquillo to Loiza, Ceballos took a Ford car and went out to meet the expected Buick. When he saw the Buick approaching he attempted to block it, but Segurola maneuvered past him. Ceballos then gave chase, keeping Segurola in sight, until they reached Carolina, where he passed Segurola, cut in front of and blocked him. Segurola thereupon backed his car, and collided with an·electric post. Ceballos then arrested Segurola, searched his car, and found whisky, brandy, vermouth, and gin. These liquors were seized and were admitted in evidence.

[1] 1. The first two assignments involve the defendants' right to be furnished by the government with a copy of the information. When the defendants were arraigned, they pleaded not guilty, and requested that a copy of the information be furnished them free of charge. This request was refused by the court, "for the reason that I know of no law requiring the same."

At the close of the trial this same contention was reasserted, and an exception saved to the court's ruling: "That, at the time that the defendants pleaded to the information, the information was in court and open to their inspection, and the defendants and their attorneys were informed by the court that they were at perfect liberty to examine said information in any way they desired, or at perfect liberty to make copies thereof, or to order the copies to be made and certified to by the clerk upon the payment of the fee as provided by law."

The defendants' contention is grounded on section 2 of the Organic Act (39 Stat. 951), which reads:

"That in all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel for his defense, to be informed of the nature and clause of the accusation, to have a copy thereof, to have a speedy and public trial, to be confronted with the witnesses against him, and to have compulsory process for obtaining witnesses in his favor." Comp. St. § 3803aa.

Analogous provisions in the United States are the Sixth Amendment and Revised Statutes, § 1033 (Comp. St. § 1699), which were construed by the Supreme Court in United States v. Van Duzee, 140 U. S. 169, 172, 11 S. Ct. 758, 760 (35 L. Ed. 399), as follows:

"By the Sixth Amendment to the Constitution, 'in all criminal prosecutions, the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.' By section 1033, where a person is indicted for a capital offense, a copy of the indictment and list of the jurors and witnesses shall be delivered to him at least two entire days before his trial. There would appear to be a negative pregnant here, and it has accordingly been held that in cases not capital the prisoner is not entitled to a copy of the indictment at government expense. United States v. Bickford [Fed. Cas. No. 14,591], 4 Blatchford, 337; United States v. Hare [Fed. Cas. No. 15,304], 2 Wheeler, Crim. Cas. 283, 288. Nor is he entitled to a list of witnesses and jurors. United States v. Williams [Fed. Cas. No. 16,712], 4 Cranch, C. C. 372; United States v. Wood [Fed. Cas. No. 16,756], 3 Wash. C. C. 440. There is no other statutory provision for carrying out the constitutional obligation of the government to inform the prisoner of the nature and cause of the accusation, or for summoning witnesses, or procuring the assistance of counsel, except that by section 878 indigent defendants are entitled to have their witnesses subpoenaed at the expense of the government. There is, however, no general obligation on the part of the government either to furnish copies of indictments, summon witnesses or retain counsel for defendants or prisoners. The object of the constitutional provision was merely to secure those rights which by the ancient rules of the common law had been denied to them; but it was not contemplated that this should be done at the expense of the government."

Probably a like construction should be given to section 2 of the Organic Act. It is, however, unnecessary to rule flatly on this question, for at most it was harmless error. The defendants were not misled or prejudiced. Under St. 1919, 40 Stat. 1181, amending section 269, Judicial Code (Comp. St. § 1246), it is the duty of this court not to sustain such technical errors as do not affect the substantial rights of the parties.

It follows that the first and second assignments are without merit. Doubtless the better practice would be to conform to what defendants' counsel claims has hitherto been the custom in Porto Rico—that the govern-

ment furnish counsel for accused persons a copy of the information or indictment.

[2] 2. In the third and fourth assignments the defendants complain because the seized liquors were admitted in evidence after the court had refused defendants' counsel the opportunity to cross-examine Ceballos, the officer who seized them, as to the source of his information that Segurola was on the road in a Buick, presumably transporting liquor contrary to law.

The contention is that, without the previous telephoned information, there was no probable cause for the seizure, within the rules laid down in Carroll v. United States, 267 U. S. 132, 154, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790. But this is not so.

Ceballos testified that he seized Segurola's car "because of confidential information which I received by telephone *and also the manner in which Segurola acted in passing me at high speed*"; and, on cross-examination by the defendant's counsel, he reiterated and elaborated his statement that he *"was suspicious because he (Segurola) threw his car against my car and because he ran away at great speed. * * * I say he tried to run away from me the first time I met him because he tried to bump his car on mine and it was going at great speed."*

On this record there was, therefore, apart from any confidential communication, abundant evidence of probable cause for the seizure under the principles in the Carroll Case, supra.

It is true that Ceballos on his direct testimony stated, without objection, that he "had information by telephone, confidential, to the effect that a Buick automobile driven by Segurola was coming." On cross-examination the following occurred:

"Q. 1. Now you have stated that you received confidential telephone information that there was a car coming with liquor, did you not? A. Yes, sir.

"Q. 2. Who gave you that information?

"Mr. Gonzalez (Assistant United States Attorney): I object, as they are the secrets of the police force, which should not be stated in a court of justice, and the stating of the source of such information would be against public safety.

"The Court. The objection is sustained.

"Mr. Mestre. I take exception."

This ruling was right. Vogel v. Gruaz, 110 U. S. 311, 4 S. Ct. 12, 28 L. Ed. 158; In re Quarles, 158 U. S. 532, 15 S. Ct. 959, 39 L. Ed. 1080. See, also, Worthington v. Scribner, 109 Mass. 487, 12 Am. Rep. 736, one of Mr. Justice Gray's learned and exhaustive opinions reviewing most of the pertinent earlier authorities. The same principle is enunciated in State v. Fortin, 106 Me. 382, 76 A. 896, 21 Ann. Cas. 454; Elrod v. Moss, 278 F. 123, 127; Arnstein v. United States, 54 App. D. C. 199, 296 F. 946, 950.

The case is in that regard plainly distinguishable from Steen v. First National Bank, 298 F. 36, a learned opinion by Circuit Judge Sanborn for the Eighth Circuit Court of Appeals. That was a suit for malicious prosecution; it appeared that the bank officials, through whom the plaintiff claimed a groundless prosecution had been instituted, had, at the preliminary examination of Mrs. Steen, voluntarily testified to the confidential communications made by them to the prosecuting officer. Under these circumstances, that learned court held that the privilege was personal and had been waived. But that court recognizes (298 F. 40) that, if the privilege had been seasonably claimed, it would have been the duty of the court to sustain it. The case is therefore, on analysis of the facts, an authority for the government, and not for the defendants, in the instant case.

[3] 3. The fifth assignment relates to the extent of the cross-examination of Santiago, who took the stand in his own behalf and testified to the effect that he had no association with Segurola, except to ask him to take him in his car over to San Juan; that he saw and knew of no liquor in the car. On cross-examination the United States Attorney was permitted to show that Santiago was in Fajardo in company with a woman of doubtful character. But, while there was objection made to this cross-examination, no exception was saved.

It follows that this assignment cannot be sustained, even if otherwise this court might be constrained to hold Santiago prejudiced.

[4] 4. The eighth assignment is to the effect that there was no sufficient evidence to convict Santiago. But he took the stand in his own behalf, and it was for the jury to say whether, in the light of his appearance and of all the circumstances of the case, his story that he was a mere passenger, without knowledge of or participation in the illegal transportation, was true or false.

[5] 5. But the sixth and seventh assignments of errors relate to the conviction and sentence under both counts—for possessing and transporting the same liquor. In that regard we think this case falls under the familiar principle illustrated in such cases as Schroeder v. United States (C. C. A.) 7 F.

(2d) 60, 65; Page v. United States (C. C. A.) 278 F. 41, 45; Friedman v. United States (C. C. A.) 13 F.(2d) 632; and that there was no such separate possession and transportation as to constitute two offenses. It follows that the convictions under the first count for possession must be reversed, and as to the second count, for transportation, affirmed.

The convictions under the first count are reversed, and those under the second count are affirmed, and the case is remanded to the District Court for further proceedings not inconsistent with this opinion.

BINGHAM, Circuit Judge (dissenting). The question as to which I desire to record my dissent is the one relating to the cross-examination of the prohibition officer who was called as a witness by the government. The record shows that this witness, having been called by the government and having testified to the receipt of a telephone communication just prior to the seizure and arrest of the defendant and what that communication was, when asked on cross-examination from whom he received the communication, was not allowed to state the name of the person on the ground that the communication was privileged, and the defendant excepted. I agree that the communication was a confidential one, which the government, and it alone, was privileged to disclose or withhold. Vogel v. Gruaz, 110 U. S. 311, 316, 4 S. Ct. 12, 28 L. Ed. 158; Worthington v. Scribner, 109 Mass. 487, 12 Am. Rep. 736. My position is that the government, having called the officer to whom the communication is said to have been made and required him to state what the communication was, thereby waived its privilege and subjected the witness to cross-examination upon the subject-matter of the communication, including the name of the person by whom it was made; that the government could not require the officer to disclose so much of the matter as was helpful to it, and then shut the door as to any further inquiry by the defendant relating to the communication; that, having required a partial disclosure, or rather one substantially covering the entire matter, it waived its privilege, and the defendant became entitled to a full disclosure. Regina v. Richardson, 3 Fost. & F. 693; Worthington v. Scribner, 109 Mass. 487, 492, 12 Am. Rep. 736.

The communication, to the extent that it was given, was important evidence for the government, and in fact the only material evidence bearing upon the legality of the seizure and arrest made by the officer, viz. whether he had probable cause for stopping and searching the defendant's automobile and making the arrest—a vital issue in the case. The evidence which the witness (the officer making the seizure) gave may, or may not, have been truthful; he may, or may not, have received the communication; and, if he received it, it may not have been obtained from a person worthy of credit. If it was not received from a person worthy of credit, it could be found that the officer acted without probable cause in making the seizure; and if the name of the person said to have made the communication had been given, and he had been called as a witness and denied making the communication, it might reasonably be found that the communication was not made, that probable cause for the seizure did not exist, and that the seizure was illegal. Cross-examination is an essential method in the trial of a cause of ascertaining the truth of testimony given in direct examination, and the denial of that right in this case was so plainly prejudicial as to warrant a new trial.