## WILSON v. UNITED STATES.
### No. 4616.

Circuit Court of Appeals, Third Circuit.
May 20, 1932.

McVICAR, District Judge, dissenting.

See, also, 59 F.(2d) 394.

Leonard E. Wales, of Wilmington, Del., Randolph C. Shaw, of Washington, D. C., and J. Bertram Wegman, of Brooklyn, N. Y., for appellant.

Clarence A. Southerland, of Wilmington, Del., for the United States.

Before DAVIS, Circuit Judge, and DICKINSON and McVICAR, District Judges.

DICKINSON, District Judge.

The defendant in the case of the United States against the Democratic League of Delaware made an appropriate motion to suppress evidence which it was averred had been illegally obtained. In the course of the hearing of this motion, Harold D. Wilson was called as a witness. He testified inter alia that he had entered the premises of the defendant by means of a key which had been furnished him by a member of the league. He was asked upon cross-examination, "Who was the member?" This question he refused to answer; was directed by the trial court to answer; and was adjudged to be in contempt for his refusal, and was committed. From this order of commitment these appeals have been taken and the question raised is the sole one of the legal propriety of his commitment. The nature of the proceeding was such that no formal expression of the views of the court below has come up with the record. There is, however, the informal discussion which led up to the order of commitment, but this does not necessarily disclose what moved the court to make the order from which this appeal is taken. We will, in consequence, follow the arguments of counsel which have been addressed to us. We pass all questions of procedure, as none is here raised; counsel being in accord that the legal propriety of the commitment may be determined on the appeal here taken for which they cite Gill v. United States (C. C. A.) 262 F. 502; Alexander v. United States, 201 U. S. 117, 26 S. Ct. 356, 50 L. Ed. 686.

We go, in consequence, directly to the question of the legal propriety of the commitment. This has been presented to us from different angles or points of view.

■ 1. Objection was interposed to the question on the ground of immateriality. We do not see, however, that this question arises. If a witness be asked a question which he declines to answer for the reason that he deems the fact sought to be elicited to be immaterial to the issue before the court, the trial court must of necessity determine the question of materiality and must enforce its ruling. Not to do so would be to surrender to the witness a function of the trial judge. The propriety of a commitment following the ruling is not determined by the merits of the evidentiary question ruled. This witness, however, did not refuse to answer on this ground but the wholly different one next discussed.

■■ 2. The real ground of his refusal was that he had been forbidden by another department of the government to make the disclosure for which the question asked, because the information had been confidentially given as an aid to crime detection. The appellate question raised is, in consequence, whether the policy of the law forbids the disclosure asked for, or at least whether a trial court should compel a witness to disclose what a co-ordinate branch of the government had commanded him not to disclose. We have so stated the question because of a difference of view respecting the basis of the doctrine. Many of the decided cases, and emphatically the early English ones and our own, as well, view the doctrine as founded upon policy of the law that the name of one by whom information has been given to an officer of the law of law violations should not be divulged. The policy recognizes that it is the duty of everyone to aid in law enforcement and has been adopted for the encouragement of those from whom information may be received. In the other view, the power to compel such disclosures is one resting in the judicial discretion of the trial court. It has in it the element of comity and official courtesy. Every branch of government owes the duty of assistance to each of the others. Out of this has grown the general doctrine accepted in the courts of the United States not to compel disclosure of the identity of any one who has given information to the government without the consent of the latter. When the witness has been called by the United States, the trial court may modify the general doctrine by

imposing the terms that consent to the disclosure be given or the witness be withdrawn and his testimony struck out as incomplete. When, however, the disclosure is asked as essential to the defense of one on trial or is essential to the determination of the cause, a further modification of the referred to doctrine is made. The general doctrine as thus modified may be stated as follows:

3. It is the right and the duty of every citizen of the United States to communicate to the executive officers of the government charged with the duty of enforcing the law all the information which he has of the commission of an offense against the laws of the United States, and such information is privileged as a confidential communication which the courts will not compel or permit to be disclosed without the consent of the government. Such evidence is excluded, not for the protection of the witness, but because of the policy of the law. Vogel v. Gruaz, 110 U. S. 311, 4 S. Ct. 12, 28 L. Ed. 158; In re Quarles, 158 U. S. 532, 15 S. Ct. 959, 39 L. Ed. 1080; Worthington v. Scribner, 109 Mass. 487, 12 Am. Rep. 736; Steen v. First Nat. Bank (C. C. A.) 298 F. 36; Segurola v. United States (C. C. A.) 16 F. (2d) 563.

■ There is, however, an exception to this rule or a modification of this general doctrine, in that it gives way to another doctrine of the law when the two conflict. A trial court must dispose of the cause before it. If what is asked is useful evidence to vindicate the innocence of the accused or lessen the risk of false testimony or is essential to the proper disposition of the case, disclosure will be compelled. Centoamore v. State, 105 Neb. 452, 181 N. W. 182; Regina v. Richardson, 2 Fost. & F. 693; Marks v. Dreyfus, L. R. 25 Q. B. D. 494; Humphrey v. Archibald, 20 Ont. App. 267; Wigmore on Evidence, p. 3331.

■ The question here at issue was whether the evidence secured by a search and seizure should be suppressed. The proceeding was ancillary to a criminal prosecution against the Delaware league. The witness had testified that he had procured access to the rooms of the league on the invitation of a member, who had supplied him with a membership card, a key, and a plan of the building. If these means of access had not been supplied by a member, but had been unlawfully obtained, the evidence secured should be suppressed. Fraternal Order of Eagles v. United States (C. C. A.) 57 F. (2d) 93. To determine this, the information sought could not be withheld. The evidence was "essential to the proper disposition of the case," and, in

consequence, admissible, and, being admissible, the witness could not withhold it. Upon his refusal to testify he was properly adjudged to be in contempt, and an order of commitment properly followed.

The assignments of error are overruled, and the order of commitment affirmed.

McVICAR, District Judge (dissenting).

A member of the Democratic League of Delaware, a social political corporation, told Harold D. Wilson, deputy prohibition administrator for the district of Delaware, that the league was in possession of intoxicating liquor and was maintaining a nuisance on its property located in the city of Wilmington, Del., in violation of the National Prohibition Act. The member gave Wilson a key for, and a diagram of, the building of the league, with directions as to where and how the liquor could be found. Wilson, with several prohibition agents, by virtue of the key furnished by the member, unlocked the locked doors in the building of the league, and, by virtue of the diagram and instructions, found the bar and liquor therein, which they seized without a search warrant. On the basis of this evidence, an information was filed in the United States District Court for the state of Delaware, January 5, 1931, charging the league with the unlawful possession of intoxicating liquor and the maintenance of a nuisance on the premises aforesaid.

January 26, 1931, the league presented its petition to the District Court praying that the property seized by the federal prohibition agents be returned, and that the evidence received be suppressed on the ground that the search and seizure, under the circumstances, was a violation of the league's rights under the Fourth Amendment. A hearing was had on the petition February 18, 1931, at which hearing the above facts were developed. While Wilson was on the witness stand for the government, and after testifying that the key, diagram, and instructions were received from a member, he was asked on cross-examination, "Who was the member?" The government's attorney objected to the question on the ground (page 69 of the record) "that it is clearly against public policy on the part of an officer of the United States to divulge the source of his information in regard to a violation of the law, particularly of a felony." The court overruled the objection and directed the witness to answer the question, which the witness refused to do, stating: "Your Honor, I will have to tell you that that was given to me in confi-

dence and I can not with honor disclose it." It further appears that Wilson was prohibited from giving such information under paragraph 51 of section VI, Regulations 4, Manual of Instructions for Officers and Agents in Field, Bureau of Prohibition. The court, after admonishing the witness of the effect of his action, adjudged him guilty of contempt, and committed him to the custody of the United States marshal until he purged himself of his contempt. The case is now before this court on Wilson's appeal from the aforesaid order. Appellant assigns as error the overruling of the government's objection to the question aforesaid and the order adjudging him guilty of contempt.

It is well established that it is the duty of every citizen to communicate to the government his knowledge of the violation of its laws, and that such communications are privileged and will be protected on the ground of public policy. In the trial of Thomas Hardy for high treason, 24 State Trials, 199, 808 (1794); Marks v. Beyfus, L. R. 1890, 25 Q. B. D. 494, 498; Vogel v. Gruaz, 110 U. S. 311, 315, 316, 4 S. Ct. 12, 28 L. Ed. 158; In re Quarles et al., 158 U. S. 532, 535, 15 S. Ct. 959, 39 L. Ed. 1080; Goetz v. United States (C. C. A. 5) 39 F.(2d) 903; Froelich v. United States (C. C. A. 8) 33 F.(2d) 660, 663; Segurola v. United States (C. C. A. 1) 16 F.(2d) 563, 565 (affirmed on other grounds, 275 U. S. 106, 48 S. Ct. 77, 72 L. Ed. 186); Mitrovich v. United States (C. C. A. 9) 15 F.(2d) 163; Smith v. United States (C. C. A. 9) 9 F.(2d) 386 (certiorari denied, sub nom. Oreb v. United States, 271 U. S. 674, 46 S. Ct. 488, 70 L. Ed. 1145); Arnstein v. United States, 54 App. D. C. 199, 296 F. 946, 950; Elrod v. Moss (C. C. A. 4) 278 F. 123, 127; Underhill's Criminal Evidence (3rd Ed.) § 287, p. 395, and Wigmore on Evidence, Vol. 5, § 2374.

In Re Quarles et al., 158 U. S. 532, on page 535, 15 S. Ct. 959, 960, 39 L. Ed. 1080, it is stated by the Supreme Court: "It is the duty and the right, not only of every peace officer of the United States, but of every citizen, to assist in prosecuting, and in securing the punishment of, any breach of the peace of the United States. It is the right, as well as the duty, of every citizen, when called upon by the proper officer, to act as part of the posse comitatus in upholding the laws of his country. It is likewise his right and his duty to communicate to the executive officers any information which he has of the commission of an offense against those laws; and such information, given by a private citizen, is a privileged and confidential communication, for which no action of libel or slander will lie, and the disclosure of which cannot be compelled without the assent of the government."

In Vogel v. Gruaz, 110 U. S. 311, 316, 4 S. Ct. 12, 15, 28 L. Ed. 158, the Supreme Court approved the following statement of the Supreme Judicial Court of Massachusetts, in Worthington v. Scribner, 109 Mass. 487, 488, 12 Am. Rep. 736: "It is the duty of every citizen to communicate to his government any information which he has of the commission of an offense against its laws." To encourage him in performing this duty without fear of consequences, the law holds such information to be among the secrets of state, and leaves the question how far and under what circumstances the names of the informers and the channel of communication shall be suffered to be known, to the absolute discretion of the government, to be exercised according to its views of what the interests of the public require.

Under this rule, the name of the member of the league communicating the alleged violation of the National Prohibition Act to Wilson, the deputy prohibition administrator, was a privileged confidential communication, disclosure of which cannot be compelled without the assent of the government.

Some authorities have recognized an exception to, or qualification of, the above rule, where the name of the informer might establish, or tend to establish, in a criminal case, the innocence of the accused. Underhill's Criminal Evidence (3d Ed.) § 287, p. 395; Wigmore on Evidence, vol. 5, § 2374; Marks v. Beyfus, L. R. (1890) 25 Q. B. D. 494; Regina v. Richardson, 3 Fost. & F. 693; United States v. Moses, 4 Wash. C. C. 726, Fed. Cas. No. 15825; People v. Davis, 52 Mich. 569, 18 N. W. 362; People v. Laird, 102 Mich. 135, 60 N. W. 457; Smith v. United States, 9 F.(2d) 386 (C. C. A. 9), and United States v. Blich, 45 F.(2d) 627 (D. C. Wyoming).

The rule is stated in Underhill's Criminal Evidence (3d Ed.) § 287, p. 395, thus: "But when the question arises in a criminal trial, and the information is material to determine the defendant's innocence, it would seem both reasonable and just that the necessity and desirability of the disclosure and the question whether the public interests would be benefited or would suffer, should be solely for the judicial discretion upon the circumstances of the case."

The rule of privilege is based on public

policy. The qualification or exception is also based on the public policy that an innocent defendant should not lose his liberty by the withholding of the name of the informer where that is material to his innocence. This qualification would therefore seemingly apply only to individual defendants and not to a corporate defendant, which has no personal liberty to lose. Our attention has not been called to any case where this qualification to the general rule has been applied in favor of a corporation.

This qualification of the rule of privilege, requiring the name of the informer to be given, applies only when "the information is material to determine the defendant's innocence." Was the name of the informer material to determine the league's innocence when it was asked of Wilson, "Who was the member?" I think not. When Wilson was asked this question, it already appeared from the uncontroverted evidence taken at the hearing that Wilson and the prohibition agents, who entered the league's property, were not members of the league; that no persons but members were entitled to admission to its property; that Wilson and the agents did not enter by invitation of any member, or under any pretense that they were granted any right or privilege from the league, or any person or persons authorized to represent the league; they entered as they knew, by the use of a key which they had no legal right to possess or use; their entry was a trespass; and they were trespassers from the time they entered upon the league's property until they left the same, and their acts were a violation of the rights of the league under the Fourth Amendment.

In the case of Fraternal Order of Eagles v. United States (C. C. A.) 57 F. (2d) 93, 94, opinion by Davis, Circuit Judge, filed March 1, 1932, entrance was gained to the property of the Fraternal Order of Eagles by the use of false membership cards. This entry was held to be a violation of the rights of the organization under the Fourth Amendment. In the opinion of the court it is stated: "A search made as the result of an entry by physical force is not necessary in order to violate the Fourth Amendment. That amendment was designed to protect the individual against the abuse of official authority. A search and seizure following an entry into the house or office of a person suspected of crime by means of fraud, stealth, social acquaintance, or under the guise of a business call are unreasonable and violate the Fourth Amendment. Weeks v. United States, 232 U.

S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Silverthorne Lumber Co., Inc. v. United States, 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319 [24 A. L. R. 1426]; Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647; Amos v. United States, 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654."

When the name of the informer was asked, the uncontroverted evidence disclosed that the league's rights under the Fourth Amendment had been violated, and that the evidence received as a result of the search and seizure would have to be suppressed. It was therefore immaterial to the issue then before the Court whether the key, diagram, and instructions were furnished by a stranger or by a member, and, if the latter, what his name was.

Under the general rule of privilege stated above, it was Wilson's right and duty to not disclose the name of the informer. The qualified rule, if applicable to a corporation, did not apply because the name of the informer was not material to the determination of the league's innocence. I would therefore reverse the order of the District Court adjudging Wilson guilty of contempt.